# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0889
DIRECT EMAIL  shecker@kaplanhecker.com

December 10, 2021

**BY ECF**

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:     **United States v. Ricardo Alberto Martinelli Linares, 21 Cr. 65 (RJD)**

Dear Judge Levy:

We represent Ricardo Alberto Martinelli Linares, who we understand will make his initial appearance before Your Honor this Saturday, December 11. Mr. Martinelli is scheduled to arrive in the United States this evening, December 10, following his voluntary extradition from Guatemala. Next Tuesday, December 14, he will plead guilty to a single count of money laundering conspiracy before Judge Dearie, under terms of an executed plea agreement attached to this submission as Exhibit A. (Mr. Martinelli's brother, Luis, is his co-defendant and pled guilty before Judge Dearie on December 2, 2021.) Following Mr. Martinelli's guilty plea, counsel will request expedited sentencing and—following Mr. Martinelli's seventeen months of detention in a Guatemalan prison and in view of recent sentences in related cases—seek a sentence of time served. We write today to request that Your Honor grant Mr. Martinelli conditional pre-sentencing release.

The government has declined even to discuss potential bail packages. It will seek to remand Mr. Martinelli to the MDC, where his brother has been detained under extremely difficult conditions that have meaningfully impaired his ability to engage with his own counsel and prepare for his plea and sentencing. As Your Honor well knows, the Bail Reform Act requires releasing a pre-conviction defendant unless "*no* condition or combination of conditions will reasonably assure [his] appearance." 18 U.S.C. § 3142(e)(1) (emphasis added). After Mr. Martinelli's agreed-upon plea is formally entered next Tuesday, the Bail Reform Act will require his release if he "is not likely to flee." *Id.* § 3143(a)(1) (standard for post-conviction, pre-sentencing release). The government's arguments for detention focus on Mr. Martinelli's departure from this country in June 2020, before the United States had charged him with any crime. But the only question now is whether, after Mr. Martinelli's voluntary extradition to enter

KAPLAN HECKER & FINK LLP

a guilty plea in this Court next week, Your Honor can be reasonably assured that Mr. Martinelli will appear for his plea hearing and sentencing. Because flight under these circumstances would gain Mr. Martinelli nothing and cost him everything, there is no conceivable reason for Mr. Martinelli to flee and the Court should order Mr. Martinelli's conditional pre-conviction release.

## I.      Background

### A.      The broader context: *Odebrecht*, *Braskem*, and *Grubisich* cases

Mr. Martinelli and his brother, Luis, have agreed to plead guilty to a single count of money laundering conspiracy after admitting their role as middlemen in a scheme to bribe a family member who previously served as a high-ranking public official in Panama.

Their case arises from, and sits on the periphery of, a broader series of investigations and prosecutions concerning bribes paid by two Brazilian companies to politicians across Central and Latin America between 2001 and 2016. *See generally, e.g.*, Govt. Sentencing Mem., *United States v. Odebrecht S.A.*, 16-CR-643 (RJD), Dkt. 15 at 2 (E.D.N.Y. Apr. 11, 2017) ("Odebrecht, along with its co-conspirators, paid approximately $788 million in bribes in association with more than 100 projects in twelve countries, including Angola, Argentina, Brazil, Colombia, Dominican Republic, Ecuador, Guatemala, Mexico, Mozambique, Panama, Peru and Venezuela," and "received approximately $3.336 billion in ill-gotten benefits").

In October of this year, Judge Dearie sentenced Jose Carlos Grubisich, the former CEO of Odebrecht subsidiary Braskem, to twenty months imprisonment. *United States v. Grubisich*, 19 Cr. 102 (RJD), Dkt. 102 (E.D.N.Y. Oct. 25, 2021). After receiving credit for his four months of pretrial detention, *see* 18 U.S.C. § 3585(b), Mr. Grubisich will serve sixteen months (less any good-time credit) for "knowingly and willfully participat[ing] in a conspiracy to divert hundreds of millions of dollars from Braskem into a secret illegal slush fund and to pay bribes to government officials, political parties, and others in Brazil to obtain and retain business." Govt. Sentencing Mem., *Grubisich*, Dkt. 97 at 1.

### B.      The Martinelli brothers' cases

For the past several years, the Martinelli brothers were targeted by various United States, Panamanian, and other foreign investigations for their role as intermediaries in one offshoot of Odebrecht's fifteen-year bribery campaign: a scheme to pay bribes to their close relative, a former senior government official in Panama.

In February 2017, Panamanian officials indicted the Martinelli brothers for money laundering. At the time, the brothers were living openly in the United States where, beginning the next year, they began meeting voluntarily with federal prosecutors concerning the United States' investigation. These meetings were initiated by the Martinelli brothers and their counsel—not by U.S. law enforcement.

KAPLAN HECKER & FINK LLP

In November 2018, while their discussions with federal prosecutors were ongoing, the brothers were detained by ICE in Florida on immigration allegations.  After their arrest, Panamanian officials stated publicly that they intended to seek the extradition of the Martinelli brothers to face the Panamanian charges that remain pending today.  The brothers were ultimately released from ICE detention on bail and remained in the United States, where they continued meeting with federal prosecutors.  As part of these discussions, the DOJ and FBI repeatedly assured the Martinelli brothers that they would arrange for a deferred action letter that would permit the brothers to remain in the United States and avoid repeated arrest and detention by ICE.

The COVID-19 pandemic began in March 2020.  In the ensuing months, the pandemic's enormity and endurance became clearer, and the brothers grew concerned that the promised deferred action letter would not appear.  They were left subject to binding removal orders that required deportation by May 15, 2020, and that subjected them to the threat of detention in facilities being ravaged by the coronavirus.  Under these conditions, the brothers made a serious and ill-considered mistake: they quietly departed the United States for Panama, seeking to return home to their family for the first time in many years and defend themselves against their pending Panamanian criminal charges.  When they exited this country in June 2020, the United States had not charged them with any crimes.

On July 6, 2020, after their travel was frustrated by various pandemic-related closures, the Martinelli brothers were arrested at the airport in Guatemala City, Guatemala, as they boarded a flight to Panama.  Before his voluntary extradition this week, Ricardo Martinelli was detained at a Guatemalan prison for more than seventeen months.

While detained in Guatemala, the brothers exercised their right to litigate a colorable challenge to the United States' extradition request.  Notwithstanding this ordinary legal process, both brothers remained engaged with United States authorities through the undersigned counsel, who was retained in July 2020 following the brothers' detention.  Through the undersigned, Ricardo Martinelli (and his brother, Luis, who ultimately retained additional counsel) continued efforts to resolve the pending United States investigation with a guilty plea.  More than a month ago, Ricardo Martinelli waived his ongoing challenge to extradition and agreed voluntarily to return to the United States to enter the guilty plea subject to the agreement he has already executed.  *See* Ex. B, Translation of Order, Guatemala Third Criminal Sentencing Court (Guatemala, C.A. Nov. 8, 2021), at 8 ("Ricardo Alberto Martinelli Linares . . . expressed his desire to agree voluntarily to the extradition request, requesting the court to perform the corresponding steps as soon as possible to carry out his delivery to the Government of the United States of America, waiving any means of challenge and appeal.").

Mr. Martinelli's executed plea agreement includes a guilty plea to one count of money laundering conspiracy, 18 U.S.C. § 1956(h), and an agreement to forfeit nearly $19 million and repatriate or liquidate additional assets.  *See* Ex. A.  These assets include considerable funds held in Swiss banks that would have been exceptionally difficult to recover without the Martinelli brothers' agreements to plead guilty and take affirmative steps to facilitate the United States'

KAPLAN HECKER & FINK LLP

access to these funds.  And indeed, Luis Martinelli has already wired the U.S. currency portion of his agreement's consented forfeiture to United States authorities.

Luis Martinelli arrived in the United States on November 15, 2021.  Magistrate Judge Marcia M. Henry arraigned him the next day and entered an order of detention.  *See United States v. Ricardo Alberto Martinelli Linares*, 21-Cr-65, Dkt. 27 (E.D.N.Y. Nov. 16, 2020); *aff'd*, Minute Entry, Nov. 23, 2020 (Dearie, J.).

Luis Martinelli was remanded to the MDC, where he was detained under exceptionally difficult conditions—including administrative segregation for quarantine purposes that lasted nearly three weeks (longer than the BOP's purported 14-day quarantine period) and ended only after repeated intervention by senior prosecutors from the United States Attorney's Office. These conditions were not only inhumane, but they materially frustrated Luis Martinelli's ability to meet with counsel in preparation for his plea and sentencing.  Indeed, counsel was able to contact Luis on just one occasion during his time in near-solitary confinement.  And his recent release into the general population only modestly improves his conditions of confinement.  MDC is currently facing countless issues that have made living conditions there acutely difficult and dangerous, including staffing shortages, overcrowding, health and safety concerns, and other issues.[1]

If Your Honor grants the government's detention motion, Ricardo Martinelli will almost certainly be placed in the same administrative segregation where his brother was detained. (Luis's unexplained extended quarantine was *before* the onset of the omicron variant and recent spike in COVID-19 cases in the New York area.  There is considerable uncertainty as to how these recent developments will affect detainees at the MDC, where five staff members currently have confirmed active COVID cases and nearly one in three staff remain unvaccinated.)[2]

Rather than remand Ricardo Martinelli to detention at the MDC, we ask Your Honor to consider our proposed bail package and set reasonable conditions for his release.

---

[1] *See generally* Noah Goldberg, *Brooklyn federal jailers work 16-hour shifts amid prisoner influx as government shuts Jeffrey Epstein suicide lockup in Manhattan*, N.Y. DAILY NEWS (Sept. 3, 2021), https://www.nydailynews.com/new-york/nynyc-elected-officials-mdc-mcc-transfers-closing-jeffrey-epstein-20210903-sy4slespabfyjjn6cnnhb3ralm-story.html (discussing how extended lockdowns have become commonplace at the MDC due to population increases after the closure of the MCC); Noah Goldberg & John Annese, *More problems at fed jail in Brooklyn; Inmates report no lights, water or hot food, few staffers*, N.Y. DAILY NEWS (Oct. 10, 2021), https://www.nydailynews.com/new-york/nyc-crime/ny-water-electricity-conditions-mdc-brooklyn-20211010-27q6mnw6jre4llsko6jbww4m74-story.html (referencing a past description of MDC as an "ongoing disgrace" and listing additional problems, including no water, inconsistent electricity, no hot food, and incredibly low staff levels).

[2] *See* NBC New York, *NYC Covid Case Average Soars as Omicron Count Rises; State Hospitalizations Up 86% in Month*, Dec. 8, 2021, *available at* https://www.nbcnewyork.com/news/coronavirus/nyc-covid-case-average-soars-as-omicron-count-rises-state-hospitalizations-up-86-in-month/3440777/; BOP, COVID-19 Vaccination Implementation, bop.gov/coronavirus (showing, as of December 9, that 306 staff were vaccinated at MDC); Office of Inspector General, Pandemic Response Report 21-002, Remote Inspection of Metropolitan Detention Center Brooklyn in iii (Nov. 2020), https://oig.justice.gov/sites/default/files/reports/21-002.pdf (showing that the MDC has approximately 460 staff).

KAPLAN HECKER & FINK LLP

## II.   Mr. Martinelli's Proposed Conditions of Pre-Sentencing Release

Ricardo Martinelli waived a colorable challenge to extradition in order to voluntarily return to the United States, enter a guilty plea, and proceed to sentencing.  With reference to outcomes in comparable cases, and in consideration of the seventeen months that Mr. Martinelli has served in Guatemalan detention, counsel intends to seek a sentence of time served.  Mr. Martinelli is also acting on an understanding that a final resolution of his United States case will potentially enable him similarly to resolve his pending Panamanian charges, although the outcome there remains uncertain.

Under these circumstances, it simply makes no sense for Ricardo Martinelli to flee.  *See* 18 U.S.C. § 3143(a)(1) (requiring release on a finding that defendant "is not likely to flee").  But for the avoidance of any reasonable doubt, we propose the following strict conditions of pre-sentencing release as the "least restrictive…combination of conditions" that will "reasonably assure [his] appearance…as required."  18 U.S.C. § 3142(c).

- A $4.5 million personal recognizance bond, secured by $1 million in Mr. Martinelli's own funds.  Additional security will be offered by financially responsible co-signers, at least several of whom will be posting their equity interests in certain real properties to bring the collateral close to the full amount of the bond.[3]

- Home confinement with electronic location monitoring at an apartment in New York City.

- Travel restricted to the SDNY and EDNY, with the surrender of any existing travel documents and no applications for additional travel documents.

- Any additional conditions the Court deems reasonably necessary.

## III.   The Bail Reform Act Requires Mr. Martinelli's Conditional Release

### A.   Legal Standard

Ricardo Martinelli has executed a plea agreement with the United States.  *See* Ex. A. Under the Bail Reform Act, the Court "shall" release him before his plea hearing unless "*no* condition or combination of conditions will reasonably assure [his] appearance."  18 U.S.C. § 3142(e)(1).  Once his plea is entered, Mr. Martinelli "shall" be released upon a finding "by clear and convincing evidence that [he] is not likely to flee."  18 U.S.C. § 3143(a)(1).

As its "shall" language indicates, the Bail Reform Act *requires* release absent certain findings of fact about a defendant's actual likelihood to flee – even after his formal conviction. *See United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (convicted defendant's clear

---

[3] Likely co-signers include, but are not limited to, eight close friends who own property in Brooklyn, Manhattan, San Francisco, and Florida, and are willing to pledge their interests in these properties to secure Mr. Martinelli's release.

KAPLAN HECKER & FINK LLP

and convincing showing of unlikelihood of flight "establishes a right to liberty that is not simply discretionary but mandatory").

Because Ricardo Martinelli is manifestly "not *likely* to flee," and because his proposed bail conditions would extinguish any *ability* to flee and thus "reasonably assure" his appearance, Your Honor should order his conditional release.

> **B.**    Mr. Martinelli is "Not Likely to Flee" After Traveling to the United States to Plead Guilty

The government will be unable to provide any plausible theory under which Mr. Martinelli has *anything* to gain by fleeing the United States after arriving to plead guilty but before imposition of his sentence.

Leaving the United States before sentencing on his guilty plea would draw a permanent strike through Mr. Martinelli's acceptance of responsibility and any resulting sentencing consideration he might receive.  And Mr. Martinelli would obtain neither refuge nor immunity if he were to return to Panama.  The government will likely (and correctly) point out that Panama does not extradite its citizens to the United States.  But this is a red herring.  If Mr. Martinelli were to flee to Panama, he would trade a nearly resolved United States criminal case for a long-pending and unresolved Panamanian one.  Ripping up his plea agreement with the United States would spoil his efforts to obtain double jeopardy protection on his related charges under Panamanian law.  Rather than avoid extradition, he would void the circumstances that he hopes will allow him to resolve both countries' criminal charges.

His prior departure from the United States under entirely different circumstances does not make Ricardo Martinelli "likely to flee" under the present circumstances.  As serious an error in judgment as this prior departure was, it predated the filing of any U.S. criminal charges and Ricardo's acceptance of responsibility and agreement to plead guilty in this country.  And while it was relatively easy for Mr. Martinelli to leave the United States in June 2020 while "at liberty," *United States v. Ricardo Alberto Martinelli Linares*, 20-MJ-498 (RML), Dkt. 1 (E.D.N.Y. June 27, 2020), his proposed release conditions would make him not only unwilling but unable to flee.

KAPLAN HECKER & FINK LLP

### Conclusion

Ricardo Martinelli is traveling to the United States to enter a guilty plea.  By accepting responsibility in a United States court for conduct that also underlies pending criminal charges in Panama, Mr. Martinelli reasonably aims to effect a resolution of both pending cases.  He will allocute in this Court to serving as an intermediary for bribes paid by Odebrecht and related entities to his family member, and thereby participating in a money laundering conspiracy in violation of U.S. law.  Shortly thereafter, his counsel will present arguments for an appropriate sentence that reflects the seriousness of his offense while avoiding unwarranted disparities with defendants found guilty of similar conduct.  There is no coherent theory by which Mr. Martinelli stands to gain more than he clearly will lose should he flee between accepting responsibility and receiving his sentence.  In view of the government's steadfast commitment to remanding Mr. Martinelli to jail, we seek the Court's consideration of our proposed bail package in advance of Mr. Martinelli's forthcoming plea hearing.

Respectfully submitted,

Sean Hecker
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118

*Counsel for Ricardo Alberto Martinelli Linares*

# EXHIBIT A

AES:JN
F. # 2020R00016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA                       PLEA AGREEMENT

       - against -

                                      21 CR 65 (RJD)

RICARDO ALBERTO MARTINELLI
LINARES,

               Defendant.

– – – – – – – – – – – – – – – – – X

          Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States

Attorney's Office for the Eastern District of New York, the United States Department of Justice,

Criminal Division, Fraud Section, and the United States Department of Justice, Criminal

Division, Money Laundering and Asset Recovery Section (collectively, the "Government"), and

RICARDO ALBERTO MARTINELLI LINARES (the "defendant") agree to the following:

          1.      The defendant will plead guilty to Count One of the above-captioned

Indictment, charging a violation of 18 U.S.C. § 1956(h).  The count carries the following

statutory penalties:

          a.      Maximum term of imprisonment: 20 years
                 (18 U.S.C. §§ 1956(a) and 1956(h)).

          b.      Minimum term of imprisonment: 0 years
                 (18 U.S.C. §§ 1956(a) and 1956(h)).

          c.      Maximum supervised release term: 3 years, to follow any term of
                 imprisonment; if a condition of release is violated, the defendant
                 may be sentenced to up to 2 years without credit for pre-release
                 imprisonment or time previously served on post-release
                 supervision
                 (18 U.S.C. §§ 3583 (b) & (e)).

d. Maximum fine:  $500,000 or twice the gross gain or loss, whichever is greater
(18 U.S.C. §§ 1956(a), 1956(h), 3571(b)(1), 3571(d)).

e. Restitution:  Mandatory in the full amount as determined by the Court
(18 U.S.C. §§ 3663A and 3664).

f. $100 special assessment
(18 U.S.C. § 3013).

g. Other penalties: removal, as set forth in paragraph 14; criminal forfeiture, as set forth in paragraphs 7 through 13
(18 U.S.C. §§ 982(a)(l) and 982(b)(1)).

2. The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case.  The Government will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence.  See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Government estimates the likely adjusted offense level under the Guidelines to be a range of imprisonment of 151 to 188 months, which is predicated on the following Guidelines calculation:

| | | |
|---|---|---:|
| Base Offense Level (§ 2S1.1(a)(2)) | | 8 |
| Plus: | Loss More than $25,000,000 (§ 2B1.1(b)(1)(L)) | +22 |
| Plus: | Conviction under 18 U.S.C. § 1956(h) (§ 2S1.1(b)(2)(B)) | +2 |
| Plus: | Offense Involved Sophisticated Laundering (§ 2S1.1(b)(3)) | +2 |

2

Total:                                                          <u>34</u>

If the defendant clearly demonstrates acceptance of responsibility, through allocution and

subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted,

pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 32 and a range of

imprisonment of 121 to 151 months, assuming that the defendant falls within Criminal History

Category I.  Furthermore, if the defendant has accepted responsibility as described above, to the

satisfaction of the Government, and if the defendant pleads guilty on or before December 15,

2021, an additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b),

resulting in an adjusted offense level of 31.  This level carries a range of imprisonment of 108 to

135 months, assuming that the defendant falls within Criminal History Category I.  The

defendant stipulates to the above Guidelines calculation.

       3.     The Guidelines estimate set forth in paragraph 2 is not binding on the

Government, the Probation Department or the Court.  If the Guidelines offense level advocated

by the Government, or determined by the Probation Department or the Court, is, for any reason,

including an error in the estimate, different from the estimate, the defendant will not be entitled

to withdraw the plea and the Government will not be deemed to have breached this agreement.

       4.     The defendant agrees not to file an appeal or otherwise challenge, by

petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the

event that the Court imposes a term of imprisonment of 151 months or below.  This waiver is

binding without regard to the sentencing analysis used by the Court.  The defendant waives all

defenses based on the statute of limitations and venue with respect to any prosecution that is not

time-barred on the date that this agreement is signed in the event that (a) the defendant's

conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the

defendant's plea is later withdrawn.  The defendant further waives the right to raise on appeal or

on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty

is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s).

Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the

defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.  The

defendant waives any right to additional disclosure from the government in connection with the

guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and

5(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C.

§ 3006A note, and will not file any claim under that law.  The defendant agrees to pay the special

assessment by check payable to the Clerk of the Court at or before sentencing.  The defendant

understands that he may be subject to removal as set forth in paragraph 14 below.  Nevertheless,

the defendant affirms that he wants to plead guilty and to waive his right to appeal as set forth at

the beginning of this paragraph, even if the consequence is the defendant's automatic removal

from the United States.

     5.    The Government agrees that:

     a.    no further criminal charges will be brought against the defendant for his participation, in and about and between 2009 and 2015, in the bribery of foreign officials and the laundering of money promoting or derived from that bribery, as alleged in the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the Indictment with prejudice;

and, based upon information now known to the Government, it will

     b.    take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

        c.       make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Government, becomes known to the Government after the date of this agreement, the Government will not be bound by subparagraphs 5(b) and 5(c).  Should it be judged by the Government that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but the Government will be released from its obligations under this agreement, including but not limited to: (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above; and (b) the provisions of paragraph 5(a)-(c).

        6.       The defendant agrees that any statements made by the defendant under oath during the plea proceeding and in the Factual Proffer (attached as Exhibit A to this agreement) will be admissible against the defendant in any criminal case involving the Government and the defendant as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing, notwithstanding any other subsequent event, including but not limited to the defendant's withdrawal or attempted withdrawal of his guilty plea, or the court's refusal to accept the defendant's guilty plea.  If the defendant violates any provision of this agreement, prosecutions for crimes currently known and unknown to the Government that are not time-barred by the applicable statutes of limitation on the date this agreement is signed may be commenced against the defendant notwithstanding the expiration of the statute of limitation between the signing of this agreement and the commencement of any such prosecutions.  If any such prosecutions are brought, subject to the provisions of Paragraph 15, the defendant waives all claims under the United States Constitution,

5

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule that statements made by the defendant on or after August 14, 2018, including any statements made by the defendant under oath during the plea proceeding, or any leads derived therefrom, should be suppressed.

7.     The defendant acknowledges that he obtained and/or acquired property that is subject to forfeiture as a result of his violations of 18 U.S.C. § 1956(h), as alleged in the above-captioned Indictment.  The defendant consents to the forfeiture of: (a) eighteen million eight hundred ninety-two thousand five hundred thirty-two dollars and forty cents ($18,892,532.40) (the "Forfeiture Money Judgment"); and (b) all right, title and interest in the following assets (the "Forfeitable Assets"): (i) all funds on deposit at Bank Vontobel AG (the "Vontobel Funds") in Switzerland in account nos. 10.520976-6 and 10.328862_1, held in the names of Diamong Investments Corp. and Waterspoon International Ltd., respectively; (ii) all funds restrained by U.S. Immigration and Customs Enforcement in connection with Luis Enrique Martinelli Linares's immigration bond, file no. A***-**4-620, Bond Receipt no. KROC1900454, and associated with Treasury Account Symbol 70X6697 Fund Code 05 (the "Bond Funds"); (iii) all funds held in the attorney escrow account at International Finance Bank held for the benefit of defendant (the "IFB Funds"); (iv) all funds held in the attorney escrow account in Switzerland for the benefit of the defendant and Luis Enrique Martinelli Linares (the "Swiss Escrow Funds"); (v) the real property and premises (the "Miami Condo") located at Icon Tower, 495 Brickell Avenue, Apt. 4701, Miami, FL, 33133; and (vi) six hundred sixty-nine thousand forty-seven dollars and twenty cents ($669,047.20) U.S. Currency (the "U.S. Currency").  The defendant agrees that the amount of the Forfeiture Money Judgment, the Forfeitable Assets and any payments toward the Forfeiture Money Judgment represent property

involved in the defendant's violations of 18 U.S.C. § 1956(h) and/or substitute assets, and thus are forfeitable to the United States pursuant to 18 U.S.C. §§ 982(a)(l) and 982(b)(1), in any administrative and/or judicial (civil or criminal) proceeding at the Government's exclusive discretion.  The defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, imposing the Forfeiture Money Judgment and forfeiting the Forfeitable Assets.  If forfeited to the United States in accordance with the provisions set forth below—and/or in the case of the Vontobel Funds and the Swiss Escrow Funds, if forfeited to the government of Switzerland—the Forfeitable Assets shall be credited towards the Forfeiture Money Judgment.  The defendant shall assist with the repatriation and/or forfeiture of the Forfeitable Assets as follows:

      a.    <u>The Vontobel Funds and the Swiss Escrow Funds</u>.  The defendant agrees to take all necessary steps as directed by the Government in the repatriation of the Vontobel Funds and the Swiss Escrow Funds, including the execution of a consent directive for the transfer of the Vontobel Funds and the Swiss Escrow Funds, to an account designated by the Government.  In the event that any portion of the Vontobel Funds and the Swiss Escrow Funds is returned to the defendant, or any other person, the defendant consents to, and will assist in, the repatriation and/or surrender of such funds for forfeiture proceedings in the United States in accordance with this agreement.

      b.    <u>The Miami Condo</u>.  The defendant consents to the forfeiture and sale of the Miami Condo, and will assist in all necessary steps including the execution of any and all documents necessary to consummate the sale of the Miami Condo, to convey clear title of the property to a third-party buyer, and to further implement the terms of such sale, including the production of any and all documents and/or information relating to the Miami Condo in the

defendant's possession, or otherwise request that third parties in possession of such documents and/or information make them readily available for the Government's receipt.

        c.      <u>The U.S. Currency</u>.  The defendant agrees to deliver to the Government prior to the Guilty Plea a money order, certified check or official bank check payable to the "United States Marshals Service" in the full amount of the U.S. Currency.

        8.      The Forfeitable Assets shall be forfeited as soon as practicable within the time periods set forth above and credited against the amount of the Forfeiture Money Judgement. The remaining amount of the Forfeiture Money Judgment shall be paid in full no later than thirty (30) days (the "Due Date") in advance of the date that the defendant is first scheduled for sentencing.  All payments made by the defendant toward the Forfeiture Money Judgment shall be made by money order, certified check or official bank check, payable to the "United States Marshals Service."  The defendant shall cause said payment(s) to be sent by overnight mail delivery to Assistant United States Attorney Laura D. Mantell, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, 7th Floor, Brooklyn, NY 11201, with the criminal docket number noted on the face of the instrument.  The defendant consents to the restraint of the Forfeitable Assets and all payments made toward the Forfeiture Money Judgment. The defendant also waives all statutory deadlines with respect to the Forfeitable Assets and all Forfeiture Money Judgment payments, including but not limited to deadlines set forth in 18 U.S.C. § 983.

        9.      If the defendant fails to pay any portion of the Forfeiture Money Judgment or forfeit any of the Forfeitable Assets on or before the Due Date, the defendant consents to the forfeiture of any other property of his up to the amount of the unpaid Forfeiture Money

Judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. §§ 853(p)(1)(A)-(E) have been met.

10.     The defendant agrees to fully assist the Government in the repatriation and/or forfeiture of the Forfeitable Assets and in effectuating the payment of the Forfeiture Money Judgment by among other things, executing any documents necessary to effectuate any transfer of title to the United States.  Such assistance shall also include providing any evidence, including any testimony, needed to seek the repatriation or forfeiture of the Forfeitable Assets and/or to defend any third-party claims to such assets.  The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of any of the Forfeitable Assets or any property against which the Government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding.  The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any of the Forfeitable Assets or any property against which the Government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

11.     The failure of the defendant to forfeit any monies and/or properties as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement.  Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Government may bring additional criminal charges against the defendant.

12.     The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any monies and/or properties forfeited hereunder, including notice set forth in an indictment, information or administrative notice.  In addition, the defendant

9

knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of the

Forfeitable Assets and the entry of a Forfeiture Money Judgment, and waives all constitutional,

legal and equitable defenses to the forfeiture of said monies and/or properties, including, but not

limited to, any defenses based on principles of double jeopardy, the Ex Post Facto clause of the

Constitution, any applicable statute of limitations, venue, or any defense under the Eighth

Amendment, including a claim of excessive fines.

13.     The defendant agrees that the entry and payment of the Forfeiture Money

Judgment is not to be considered the payment of a fine, penalty, restitution loss amount or

payment of any income taxes that may be due, and shall survive bankruptcy.

14.     The defendant recognizes that pleading guilty may have consequences

with respect to the defendant's immigration status if the defendant is not a citizen of the United

States.  Under federal law, a broad range of crimes are removable offenses, including the offense

to which the defendant is pleading guilty.  Indeed, because the defendant is pleading guilty to

money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), removal is presumptively

mandatory.  Removal and other immigration consequences are the subject of a separate

proceeding, however, and the defendant understands that no one, including the defendant's

attorney or the District Court, can predict with certainty the effect of the defendant's conviction

on the defendant's immigration status.  The defendant nevertheless affirms that the defendant

wants to plead guilty regardless of any immigration consequences that the defendant's plea may

entail, even if the consequence is the defendant's automatic removal from the United States.

15.     This agreement does not bind any federal, state, or local prosecuting

authority other than the Government, and does not prohibit the Government from initiating or

prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

10

Apart from any written proffer agreements signed August 14, 2018 and initialed on September

26, 2018, December 21, 2018, April 3, 2019, June 12, 2019, September 18, 2019 and October 30,

2019, no promises, agreements or conditions have been entered into by the parties other than

those set forth in this agreement and none will be entered into unless memorialized in writing

and signed by all parties.  Apart from any written proffer agreements, if applicable, this

agreement supersedes all prior promises, agreements or conditions between the parties.  To

become effective, this agreement must be signed by all signatories listed below.


Dated: Brooklyn, New York
     December 10   , 2021

BREON PEACE
United States Attorney
Eastern District of New York

By: _Alixandra Smith_
   Alixandra Smith
   Assistant U.S. Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, Dept. of Justice

By:
   Michael Culhane Harper
   Trial Attorney

11

Approved by:

David Pitluck
Supervising Assistant U.S. Attorney


DEBORAH L. CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division, Dept. of Justice


By:
Barbara Levy
Michael B. Redmann
Trial Attorneys


I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

RICARDO ALBERTO MARTINELLI LINARES
Defendant


Approved by:

Sean Hecker
Counsel to Defendant

# EXHIBIT B



City of New York, State of New York, County of New York

I, Shayna Himelfarb, hereby certify that the document "**NUMERO_ÚNICO_01036-2020-00010**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

_____
Shayna Himelfarb

Sworn to before me this
December 6, 2021



_____
Signature, Notary Public

_____
Stamp, Notary Public

CERTIFIED
TRANSLATION

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT
[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible]
[signature]

**UNIQUE NUMBER 01036-2020-00010**

**EXTRADITION 10-2020 SECRETARIAT**

**THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT. GUATEMALA, NOVEMBER EIGHT OF THE YEAR TWO THOUSAND TWENTY-ONE.**

**I)**   The formal request for extradition presented by the government of the United States of America against the Panamanian citizen **RICARDO ALBERTO MARTINELLI LINARES** is pending to be settled.

**II)**   PERSONAL **IDENTIFICATION DATA OF THE PARTY SUBJECT TO THE EXTRADITION REQUEST, INDICATING THE REQUESTING STATE:** The government of the United States of America, through the corresponding channels, requires the extradition of the Panamanian citizen RICARDO ALBERTO MARTINELLI LINARES, forty-two years old, single, Panamanian, a businessman, born on August twenty-six, nineteen seventy-nine in Panama City, he is the son of Ricardo Alberto Martinelli Berrocal and Marta Linares de Martinelli, and identifies himself with a Panamanian passport number PA 0803503.

**III) REGARDING THE DETAIL OF THE FACTS ATTRIBUTED TO THE PARTY SUBJECT TO THE EXTRADITION REQUEST.** Pursuant to the written request for extradition presented in this court by the Public Prosecutor's Office; according to Verbal Note number two hundred thirty-five dated August twenty-seven of the year two thousand twenty, and Verbal Note number one hundred ninety-nine dated May three, two thousand twenty-one, sent by the Embassy of the United States of America accredited in Guatemala, through the Ministry of Foreign Affairs of the Republic of Guatemala, in which they submit the formal

[signature]                              [signature]

1

request for the extradition of the Panamanian citizen **RICARDO ALBERTO MARTINELLI LINARES.** The party subject to the extradition request is subject to an Amended Indictment in case number 20-M-498, (also referred to as 20- 498M and 2020R00016), filed on July twenty, two thousand twenty, in the United States District Court. for the Eastern District of New York, being charged with the following crimes: **CHARGE ONE:** Illegal association to commit money laundering, in violation of sections 1956 (h), 1956 (a) (1)(B)(i), 1956 (a)(2)(A), and 1957 of Title 18 of the Code of United States of America.

**CHARGE TWO:** Money laundering in violation of sections 1956 (a)(l)(B)(i), and 2 Title 18 of the United States of America Code; and a formal indictment in case number 1: 21-cr-00065 (RJD) (also referred to as 1:21-cr-00065 (DG) (VMS), Cr. Number 1:21-cr-00065 (DG) ( VMS), Case 1:21-cr-00065-DG, Case 1:21-cr-00065 (RJD), and Case Number 1:21-cr-00065 (DG) (VMS)), filed on February four, two thousand twenty-one, in the United States District Court, Eastern District of New York, charging him with the following crimes: **CHARGE ONE:** Conspiracy to commit money laundering, in violation of Sections 1956(h), 1956 (a)(1)(B)(i), 1956 (a)(2)(A), and 1957, 3238, and 3551 et seq. of Title 18 of the Code of the United States of America.

**CHARGES TWO AND THREE:** Money laundering, in violation of sections 1956 (a)(1)(B)(i) 3238 and 3551 et seq. of Title 18 of the United States of America Code. These charges are made based on the following facts: "On December 21, 2016, Odebrecht S.A. (hereinafter referred to as" Odebrecht") pleaded guilty in the United States to conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act and admitted a structure that lasted from 2001 to 2016 to secure billions of dollars in infrastructure projects by paying more than $700 million US dollars in bribes to government officials in Panama and

2

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible] [signature]

other countries. Odebrecht was a Brazilian holding company that conducted business in several industries, including engineering, construction, infrastructure, energy, chemicals, utilities, and real estate. Odebrecht concealed the nature, source, ownership, and control of the proceeds of the bribery structure by channeling the proceeds of the structure through the bank accounts of shell companies abroad to the final beneficiaries of the bribes - foreign officials and their representatives. Odebrecht had wire transfers carried out from bank accounts related to Odebrecht to the bank accounts of foreign shell companies controlled by Odebrecht, including through accounts based in New York. The funds destined for the payment of illegal bribes were then transferred through multiple bank accounts of shell companies abroad around the world, including through bank accounts based in New York, before they reached the final recipients of the bribe. Odebrecht used an agent in the United States to establish and operate bank accounts of shell companies abroad used for money laundering and for bribery in favor of foreign officials, including a high-ranking public official in Panama (hereinafter referred to as the "Panama Government Official") from 2009 to 2014. The Panama Government Official was a "public official" as said term is defined in the Criminal Code of the Republic of Panama. Between August 2009 and January 2014, Ricardo Alberto Martinelli Linares (hereinafter Ricardo Martinelli) and Luís Enrique Martinelli Linares (hereinafter referred to as "Luis Martinelli"), together with other people, took part in the bribery of Odebrecht and the money laundering structure, among others, acting as intermediaries

[signature]                                    [signature]

3

for bribery payments and other valuables that Odebrecht offered and provided to the Official Government of Panama [*sic:* Panama Government Official]. Among other things, RICARDO MARTINELLI and Luis Martinelli established bank accounts abroad, in Switzerland, under the name of shell companies to receive and conceal bribery payments that Odebrecht made in favor of the Official Government of Panama [*sic:* Panama Government Official]. RICARDO MARTINELLI and Luis Martinelli established shell companies in foreign jurisdictions; they acted as signatories to some of the bank accounts of the shell companies and they personally sent and ensured the sending of bank transfers through the structure of the bank accounts of shell companies to conceal and spend the proceeds of the bribery. The purpose of opening and operating the bank accounts of Swiss shell companies was to promote, assist, facilitate, conceal, and act as intermediaries for the bribery payments of Odebrecht for the benefit of the Official Government of Panama [*sic:* Panama Government Official], in such a way that Odebrecht could obtain a business with an undue advantage and being awarded and maintaining the business in Panama, causing the Official Government of Panama [*sic:* Panama Government Official], in a corrupt manner, to carry out acts proper to his position in its Official capacity and in violation of his obligations. In total, between approximately 2009 and 2012, the bank accounts of the shell companies in Switzerland controlled by RICARDO MARTINELLI and Luis Martinelli received a total of approximately 28 million US dollars in bribery from Odebrecht in favor of the Official Government of Panama [*sic:* Panama Government Official]. At least approximately 19 million US dollars of those bribery proceeds were transferred through US correspondent bank accounts

4

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible] [signature]

in New York. RICARDO MARTINELLI and Luis Martinelli later carried out numerous financial transactions in banks in the United States, some of which were in New York, New York, involving the proceeds of payments for bribery by Odebrecht. From approximately August 2009 to September 2015, RICARDO MARTINELLI and Luis Martinelli, together with others, performed a series of steps to open and manage secret bank accounts in the name of shell companies in foreign jurisdictions, which were used to receive and then transfer and deliver bribery payments that Odebrecht made or had made in favor of the Official Government of Panama [sic: Panama Government Official]. Specifically, RICARDO MARTINELLI and Luis Martinelli established shell companies in foreign jurisdictions; they served as signatories on some of the bank accounts of the shell companies, and they personally sent and ensured the sending of bank transfers through the structure of the bank accounts of the shell companies to conceal and spend the proceeds of the bribery." The crimes for which RICARDO ALBERTO MARTINELLI LINARES is requested for extradition are contemplated in article 23 of the United Nations Convention Against Corruption of October thirty-one, two thousand twenty-three [sic: Panama Government Official], to which Guatemala and the United States of America are parties. Pursuant to Article 44 of the United Nations Convention Against Corruption, each crime to which the Article applies must be considered to be included as an extraditable crime in any existing extradition treaty between the parties.

**IV) LEGAL GROUNDS:** In the case at hand, the United States of America has requested, from the State of Guatemala, the Formal

[signature]                    [signature]

5

Extradition of the Panamanian citizen **RICARDO ALBERTO MARTINELLI LINARES** and the party subject to the extradition request is attributed facts related to corruption, from which this Court analyzes the applicability of the Extradition Treaty signed between the United States of America and the State of Guatemala. In this sense, this court, according to the documentation sent by the respective judicial authority of the United States of America, observes that the criminal acts attributed to the aforementioned Panamanian citizen occurred approximately between August two thousand nine and January two thousand fourteen, according to Amended Indictment in case number 20-M-498 (also referred to as 20-498 M and 2020R00016), filed on July twenty, two thousand twenty in the United States District Court for the Eastern District of New York, and the treaty between the Government of the United States of America and the State of Guatemala invoked was signed on February twenty-seven of the year nineteen oh three, approved in accordance with Decree of the Congress of the Republic number five hundred sixty-one, issued on April twenty-eight, nineteen oh three, ratified by the State of Guatemala on June twelve, nineteen hundred oh three, amended by the Supplementary Convention on February twenty, nineteen forty, ratified on June twenty, nineteen forty; which means that the applicability of the invoked treaty to make it effective is appropriate, since the facts attributed to the party subject to the extradition request occurred after the invoked Treaty and Supplementary Convention had entered into force. The Regulatory Law of Extradition Procedure, in its article 3, establishes: "Agreement or voluntary surrender. The person against whom the extradition procedure is directed may agree to the request or voluntarily surrender to the Requesting State at any time during the procedure, even before the

6

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT
[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible]
[signature]

formal presentation of the request. The court hearing the procedure, once the declaration has been received, without more formalities, will place the person requested in Extradition at the disposal of the Ministry of Foreign Affairs so that it coordinates with the authority of the requesting State and to verify the immediate delivery. When the formal request refers to or includes several subjects, and one or more of them agree to the request made or decide to surrender voluntarily, it must be resolved in accordance with the preceding paragraph, notwithstanding the continuation of the extradition process started for the other persons." Article 4 of the same law establishes: Effects of the agreement or voluntary surrender. "The agreement to the formal request for extradition or voluntary surrender to the Requesting State will suspend the passive extradition procedure for whoever agrees. The request for agreement or voluntary surrender must be accompanied by the express waiver of any recourse or action brought before any jurisdictional or constitutional body." Likewise, Article XII of the Extradition Treaty establishes: "All objects in the possession of the accused and obtained through the act of which he is accused, or that may serve as evidence of the crime for which his extradition is requested, will be seized and handed over with him, if it is so ordered by the competent authority..." In this sense, this court concludes that it is appropriate to apply the Extradition Treaty in force between the United States of America and the State of Guatemala, the Supplementary Convention to said Treaty, the United Nations Convention Against Corruption, and the Regulatory Law of the Extradition Procedure.

[signature]                              [signature]

7

**V)   REGARDING THE FACTUAL GROUNDS:** In the case at hand, at a hearing on the same date, convened to resolve the legal situation of the Panamanian citizen requested in extradition **RICARDO ALBERTO MARTINELLI LINARES;** being aware that he is being formally requested by the Government of the United States of America and of the evidence sent by the requesting State, because he is accused in that country of having committed criminal acts related to corruption, he expressed his desire to agree voluntarily to the extradition request, requesting the court to perform the corresponding steps as soon as possible to carry out his delivery to the Government of the United States of America, waiving any means of challenge and appeal. **Defense attorney** Abraham Isaí Giron Morales, after hearing from his client of the desire to agree to this request, waived any recourse to challenge pursuant to article 19 of the Law of the Judicial Body; and pursuant to article 3 and 4 of the Regulatory Law of Extradition Procedure, he requested that his principal's will to agree be accepted and that the present extradition procedure be suspended, and that the return of the goods that will be made available to the Public Prosecutor's Office that are not related to the extradition procedure be authorized. **The Public Prosecutor's Office**, knowing the disposition of the person subject to the request to agree to the extradition request, requested that the request be accepted, that said request be declared admissible due to the charges described in the formal request for extradition and supplementary documentation, that the extradition procedure be suspended, that the person subject to the request be placed at the disposal of the Ministry of Foreign Affairs for his formal delivery to the requesting country, that the seizure of the property that was seized from the party subject to the request for extradition be ordered, which are: a)A cellphone possibly black

8

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible] [signature]

with green, with an apple logo on the back, with a transparent protector, with cover and sealed battery, without micro SD, CLARO SIM, 89502 01019 89664 4924F, IMEI 353894104609507. b) A cellphone, black with an apple logo on the back, with a red protector, cover and sealed battery, without micro SD, without SIM card, IMEI 356469101367503, to be delivered with Mr. Ricardo Alberto Martinelli Linares to the requesting country; and, regarding the other seized objects, they are: a) Cash, in the amount of €2,425.00 EUROS and Q 55.00 QUETZALES, b) A diplomatic identification of the Central American Parliament; and c) Eight plastic cards and one metal card in the name of Ricardo Alberto Martinelli Linares remain at the disposal of the Public Prosecutor's Office, so that if the defense or the party subject to the request wishes to have them back, they must proceed according to law, as they do not meet the requirement established by article XII of the bilateral treaty. It also stated that the following documents are presented: 1) Official letter identified as Reference: UEAI 2020-012 dated July nine, two thousand twenty, issued by the Director of Legal Affairs, International Treaties, and Translations of the Ministry of Foreign Affairs of the Government of Guatemala, in which it is indicated that, according to information provided by the General Subdirectorate of Diplomatic and Ceremonial Protocol, there is no Diplomatic Agent registered under the name of RICARDO ALBERTO MARTINELLI LINARES and/or RICARDO MARTINELLI LINARES; 2) Official Letter identified as Reference UEAI 2020-012 dated August twelve, two thousand twenty, issued by the Director of Legal Affairs, International Treaties, and Translations of the

[signature]                              [signature]

9

Ministry of Foreign Affairs of the Government of Guatemala, which contains information from the Central American Parliament related to Mr. RICARDO ALBERTO MARTINELLI LINARES; 3) Official letter identified as FE-30128-2021 dated November two, two thousand twenty-one issued by the Public Prosecutor's Office for Enforcement in which it is stated that the party subject to the request for extradition has not been granted the criteria of Opportunity, Conditional Suspension of the Execution of the Penalty, and/or Summarized Procedure; 4) Official letter identified as 82-2021/sctr dated October eight, two thousand twenty-one, issued by the Central Registry of Detainees of the National Center for Judicial Analysis and Documentation; 5) Electronic Ballot No. E2021-0037366 dated October eleven, two thousand twenty-one, issued by the Judicial Body, Supreme Court of Justice of Guatemala, in which it appears that the party subject to the request for extradition, Ricardo Alberto Martinelli Linares, does not have a criminal record; and 6) Official Letter No. 887-2021/WS dated November three, two thousand twenty-one, issued by the Unit for the Registration of Detentions and Alerts, Subdirectorate of Immigration Control of the Guatemalan Migration Institute, in which it is stated that Mr. Ricardo Alberto Martinelli Linares has no detention order in force, but he does have a current immigration alert. In that sense, based on what was stated by the party subject to the request and his defense, the court concludes and, without further formalities, declares the formal extradition against the aforementioned person to be admissible, making him available to the Ministry of Foreign Affairs to coordinate with the authority of the requesting State and verify his delivery, since, according to information presented by the Public Prosecutor's Office, he is not subject to criminal proceedings in the country. Therefore, by virtue of the agreement, the present Extradition

10

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [Central America] SECRETARIAT

[seal:] THIRD CRIMINAL SENTENCING COURT, NARCOACTIVITY AND CRIMES AGAINST THE ENVIRONMENT Guatelama, C.A. [illegible] [signature]

procedure is suspended. By virtue of what has been stated by the Public Prosecutor's Office and in compliance with Article XII of the Extradition Treaty, the following objects have been seized: a) **A cellphone**, possibly black with green, with an apple logo on the back, with a transparent protector, with cover and sealed battery, without micro SD, CLARO SIM 89502 01019 89664 4924F, IMEI 353894104609507. b) **A cellphone**, black with an apple logo on the back, with a red protector, a cover and sealed battery, without micro SD, without SIM card, IMEI 356469101367503, which must be delivered to the requesting country together with the Panamanian citizen RICARDO ALBERTO MARTINELLI LINARES; and the objects seized from the party subject to the request for extradition are made available to the Public Prosecutor's Office, being the following: a) Cash amounting to 2,425 EUROS and 55 QUETZALES, b) A diplomatic identification of the Central American Parliament; and c) Eight plastic cards and one metal card in the name of Ricardo Alberto Martinelli Linares, so that, if the defense or the party subject to the request wishes to have them back, they must proceed according to law, as they do not meet the requirement established by article XII of the bilateral treaty.

**VI) OPERATIVE PART:** This Court, based on what is considered and the provisions of Articles: 6, 12, 14, 17, 27, 149 of the Political Constitution of the Republic of Guatemala; 23 and 44 of the United Nations Convention Against Corruption; I, III, IV, V, VII, VIII, XI, and XII of the Extradition Treaty signed between Guatemala and the United States, and I, II, and III of the Supplementary Convention to the Extradition Treaty, 2, 3, 4, 17, 19, 22, 29 of the Law Regulating the Extradition

[signature]

11

Procedure, 141, 142, 143, of the Law of the Judicial Body, **WITH AN UNANIMOUS RULING, DECLARES: I) ADMISSIBLE THE FORMAL EXTRADITION** of the Panamanian citizen **RICARDO ALBERTO MARTINELLI LINARES,** by virtue of the agreement to the extradition request; due to what has been considered above; **II)** The provisional detention of the party subject to the request is formalized, until his delivery to the requesting State is made effective; **III)** Inform the National Civil Police to annul the arrest warrant issued against the party subject to the request; **IV)** The present Extradition procedure is suspended, by virtue of the agreement; **V)** With certification of the most important passages of the judicial process and of the ruling that decreed the extradition, through the Secretariat of the Supreme Court of Justice, contact and make available to the Ministry of Foreign Affairs so that his delivery is made effective; **VI)** The seizure of the two telephones identified above is ordered, so that they be delivered together with the party subject to the request in extradition to the authorities of the United States of America; **VII)** The objects detailed in this resolution remain at the disposal of the Public Prosecutor's Office, so that, if the defense or the party subject to the request wishes to have them back, they must proceed according to law, as they do not meet the requirement established by article XII of the bilateral treaty; **VIII)** It is hereby ordered that it be notified.

[signature]
**ATTORNEY SAÚL ORLANDO ÁLVAREZ RUIZ**
**PRESIDING JUDGE**

[signature]
**CÉSAR AUGUSTO AMÉZQUITA RUANO**
**JUDGE**

[signature]
**ATTORNEY OSCAR ROLANDO DE LEON COLOMA**
**JUDGE**

[signature]

12

[seal:] THIRD CRIMINAL SENTENCING COURT,
NARCOACTIVITY AND CRIMES AGAINST THE
ENVIRONMENT Guatelama, C.A. [Central
America] SECRETARIAT
[seal:] THIRD CRIMINAL SENTENCING COURT,
NARCOACTIVITY AND CRIMES AGAINST THE
ENVIRONMENT Guatelama, C.A. [illegible]
[signature]
**MS. BERTA PATRICIA AMAYA AYALA
SECRETARY**

[signature]                                    [signature]

13

# ORIGINAL SPANISH-LANGUAGE DOCUMENT



**NUMERO ÚNICO 01036-2020-00010**

**EXTRADICION 10-2020 SECRETARÍA**

**TRIBUNAL TERCERO DE SENTENCIA PENAL, NARCOACTIVIDAD Y DELITOS CONTRA EL AMBIENTE. GUATEMALA, OCHO DE NOVIEMBRE DEL AÑO DOS MIL VEINTIUNO.** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**I)** Se tiene a la vista para resolver la solicitud formal de extradición presentada por el gobierno de los Estados Unidos de América, en contra del ciudadano panameño **RICARDO ALBERTO MARTINELLI LINARES.** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**II) DATOS DE IDENTIFICACION PERSONAL DEL SOLICITADO, CON INDICACIÓN DEL ESTADO REQUIRENTE:** El gobierno de los Estados Unidos de América, por el conducto correspondiente requiere la extradición del ciudadano panameño **RICARDO ALBERTO MARTINELLI LINARES,** de cuarenta y dos años de edad, soltero, panameño, empresario, nació el veintiséis de agosto de mil novecientos setenta y nueve en la Ciudad de Panamá, es hijo de Ricardo Alberto Martinelli Berrocal y Marta Linares de Martinelli, se identifica con pasaporte panameño número PA 0803503. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**III) DE LA RELACION SUSCINTA DE LOS HECHOS ATRIBUIDOS AL SOLICITADO EN EXTRADICIÓN.** De conformidad con la solicitud escrita de extradición presentada en este tribunal por el Ministerio Público; según Nota Verbal número doscientos treinta y cinco de fecha veintisiete de agosto de año dos mil veinte y Nota Verbal número ciento noventa y nueve de fecha tres de mayo de dos mil veintiuno, remitidas por la Embajada de Estados Unidos de América acreditada en Guatemala, a través del Ministerio de Relaciones Exteriores de la República de Guatemala, en las cuales presentan la solicitud formal de extradición del ciudadano panameño **RICARDO ALBERTO MARTINELLI**

1

**LINARES.** El requerido en extradición, es sujeto de una Acusación Enmendada en el caso número 20-M-498, (también referido como 20-498M y 2020R00016), presentada el veinte de julio de dos mil veinte, en el Tribunal Distrital de los Estados Unidos para el Distrito Este de Nueva York, imputándole los siguientes delitos: **CARGO UNO:** Asociación Ilícita para cometer lavado de dinero, en violación de las secciones 1956 (h), 1956 (a)(1)(B)(i), 1956 (a)(2)(A) y 1957 del Título 18 de Código de Estados Unidos de América. **CARGO DOS:** Lavado de dinero en violación de las secciones 1956(a)(1)(B)(i), y 2 Título 18 de Código de Estados Unidos de América; y una acusación formal en el caso número 1:21-cr-00065(RJD) (también referido como 1:21-cr-00065 (DG) (VMS), Cr. Número 1:21-cr-00065(DG) (VMS), Caso 1:21-cr-00065-DG, Caso 1:21-cr-00065(RJD) y Caso Número 1:21-cr-00065(DG) (VMS)), presentada el cuatro de febrero de dos mil veintiuno, en el Tribunal de Distrito de los Estados, Distrito Este de Nueva York, imputándole los delitos siguientes: **CARGO UNO:** Conspiración para cometer lavado de dinero, en violación a las Secciones 1956(h), 1956(a)(1)(B)(i), 1956 (a) (2)(A) y 1957, 3238 y 3551 y siguientes del Título 18 de Código de Estados Unidos de América. **CARGO DOS Y TRES:** Lavado de dinero, en violación a las secciones 1956(a)(1)(B)(i) 3238 y 3551 y siguientes del Título 18 de Código de Estados Unidos de América. Estos cargos se hacen en base a los siguientes hechos: "El 21 de diciembre de 2016, Odebrecht S.A. (en adelante referida como "Odebrecht") se declaró culpable en Estados Unidos por conspiración para violar las disposiciones contra el soborno de la Ley de Prácticas Corruptas en el Extranjero y admitió sobre una estructura que duró desde 2001 hasta 2016 para asegurar billones de dólares en proyectos de infraestructura pagando más de $700 millones dólares de Estados Unidos en sobornos hacia oficiales de gobierno en

2

Panamá y otros países. Odebrecht era una compañía brasileña de propiedad ("holding") que condujo negocios en múltiples industrias, incluyendo ingeniería, construcción, infraestructura, energía, químicos, servicios públicos e inmobiliaria. Odebrecht ocultó la naturaleza, fuente, propiedad y control de las ganancias de la estructura de soborno canalizando las ganancias de la estructura por medio de cuentas bancarias de compañías ficticias en el extranjero hacia los beneficiarios finales de los sobornos - funcionarios extranjeros y sus representantes. Odebrecht causó que se realizaran transferencias bancarias desde las cuentas bancarias relacionadas con Odebrecht hacia las cuentas bancarias de compañías ficticias en el extranjero controladas por Odebrecht incluyendo el paso por cuentas basadas en Nueva York. Los fondos destinados para el pago de sobornos ilegales luego eran transferidos a través de múltiples cuentas bancarias de compañías ficticias en el extranjero a través del mundo, incluyendo a través de cuentas bancarias basadas en Nueva York, antes que llegasen a los destinatarios finales del soborno. Odebrecht utilizó un agente en Estados Unidos para establecer y operar las cuentas bancarias de compañías ficticias en el extranjero utilizadas para el lavado de dinero y para sobornos para beneficio de oficiales extranjeros, incluyendo un funcionario público de alto rango en Panamá (en adelante referido como "Oficial del Gobierno de Panamá") desde 2009 hasta 2014. El Oficial del Gobierno de Panamá era un "servidor público" como está definido dicho término en el Código Penal de la República de Panamá. Aproximadamente entre agosto 2009 y enero 2014, Ricardo Alberto Martinelli Linares (en adelante Ricardo Martinelli) y Luís Enrique Martinelli Linares (en adelante referido como 'Luís

3

Martinelli"), junto con otras personas, participaron en el soborno de Odebrecht y la estructura de lavado de dinero, entre otras cosas, sirviendo como intermediarios por pagos de soborno y otras cosas de valor que Odebrecht ofreció y proveyó al Gobierno Oficial de Panamá. Entre otras cosas, RICARDO MARTINELLI y Luis Martinelli establecieron cuentas bancarias en el extranjero, en Suiza, bajo el nombre de empresas ficticias para recibir y encubrir los pagos por soborno de parte de Odebrecht realizados para el beneficio del Gobierno Oficial de Panamá. RICARDO MARTINELLI y Luis Martinelli establecieron compañías ficticias en jurisdicciones extranjeras; quienes sirvieron como signatarios en algunas de las cuentas bancarias de las empresas ficticias; y personalmente enviaron y causaron el envío de transferencias bancarias por medio de la estructura de las cuentas bancarias de empresas ficticias para ocultar y gastar las ganancias del soborno. El propósito de la apertura y operación de las cuentas bancarias de empresas ficticias suizas fue promover, asistir, facilitar, ocultar y servir como intermediarios de los pagos de soborno de Odebrecht para el beneficio del Gobierno Oficial de Panamá, de manera que Odebrecht pudiese obtener un negocio de ventaja indebida y ganar y mantener el negocio en Panamá, causando que el Gobierno Oficial de Panamá de forma corrupta realizara actos propios de su posición en su capacidad Oficial y en violación de sus obligaciones. En total, entre aproximadamente 2009 y 2012, las cuentas bancarias de las empresas ficticias en Suiza controladas por RICARDO MARTINELLI y Luis Martinelli recibieron un total de aproximadamente $28 millones de dólares de Estados Unidos en soborno de parte de Odebrecht para el beneficio del Gobierno

4



Oficial de Panamá. Al menos aproximadamente $19 millones de dólares de Estados Unidos de esas ganancias en sobornos fueron transferidos a través de cuentas bancarias corresponsales en Estados Unidos en Nueva York. RICARDO MARTINELLI y Luis Martinelli después llevaron a cabo numerosas transacciones financieras en bancos de Estados Unidos, de las cuales algunas de ellas fueron en Nueva York, Nueva York, implicando las ganancias de pagos por soborno de parte de Odebrecht. Desde aproximadamente agosto de 2009 hasta septiembre de 2015, RICARDO MARTINELLI y Luis Martinelli, junto con otras personas, llevaron a cabo una serie de pasos para abrir y manejar cuentas bancarias secretas a nombre de las compañías ficticias en jurisdicciones extranjeras, las cuales eran utilizadas para recibir y luego transferir y entregar pagos de soborno que Odebrecht hizo causo el realizar para beneficio del Gobierno Oficial de Panamá. Específicamente, RICARDO MARTINELLI y Luis Martinelli establecieron compañías ficticias en jurisdicciones extranjeras; sirvieron como signatarios en algunas de las cuentas bancarias de las empresas ficticias; y personalmente enviaron y causaron el envío de transferencias bancarias por medio de la estructura de las cuentas bancarias de las empresas ficticias para ocultar y gastar las ganancias del soborno." Los delitos por los cuales el requerido RICARDO ALBERTO MARTINELLI LINARES es solicitado en extradición se encuentran contemplados en el artículo 23 de la Convención de las Naciones Unidas Contra la Corrupción del treinta y uno de octubre de dos mil veintitrés, del cual Guatemala como los Estados Unidos de América son parte. De acuerdo al Artículo 44 de la Convención de las Naciones Unidas Contra la Corrupción, cada delito al cual el Artículo aplique deberá ser considerado para ser incluido

5

como un delito extraditable en cualquier tratado de extradición existente entre las partes. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**IV) FUNDAMENTOS DE DERECHO:** En el presente caso, los Estados Unidos de América, ha requerido al Estado de Guatemala, la Formal Extradición del ciudadano panameño **RICARDO ALBERTO MARTINELLI LINARES** siendo que al requerido se le atribuyen hechos relacionados con corrupción de lo cual este Tribunal analiza la aplicabilidad del Tratado de Extradición suscrito entre los Estados Unidos de América y el Estado de Guatemala. Al respecto este tribunal conforme a la documentación remitida por la autoridad judicial respectiva de los Estados Unidos de América, se advierte que los hechos delictivos que se le atribuyen al ciudadano panameño antes mencionado, sucedieron aproximadamente entre agosto dos mil nueve y enero dos mil catorce, según Acusación Enmendada en el caso número 20-M-498 (también referida como 20-498 M y 2020R00016), presentada el veinte de julio de dos mil veinte en el Tribunal Distrital de los Estados Unidos para el Distrito Este de Nueva York, y el tratado entre el Gobierno de los Estados Unidos de América y el Estado de Guatemala que se invoca fue suscrito el veintisiete de febrero del año de mil novecientos tres, aprobado conforme Decreto del Congreso de la República número quinientos sesenta y uno, emitido el veintiocho de abril de mil novecientos tres, ratificado por el Estado de Guatemala el doce de junio de mil novecientos tres, enmendado por la Convención Suplementaria el veinte de febrero de mil novecientos cuarenta, ratificado el veinte de junio de mil novecientos cuarenta; lo que significa que es procedente la aplicabilidad del tratado invocado para hacerla efectiva, ya que los hechos atribuidos al solicitado, sucedieron posterior de haber entrado en vigencia el Tratado y la Convención

6



Suplementaria invocados. La Ley Reguladora del Procedimiento de Extradición, en su artículo 3 establece: "Allanamiento o entrega voluntaria. La persona contra la que se dirija el procedimiento de extradición, podrá allanarse a la solicitud o entregarse voluntariamente al Estado Requirente en cualquier momento del procedimiento, incluso antes de la presentación formal de la solicitud. El tribunal que conoce del procedimiento, una vez recibida la declaración, sin más trámite, pondrá a la persona reclamada en Extradición a disposición del Ministerio de Relaciones Exteriores para que éste coordine con la autoridad del Estado solicitante y se verifique la entrega inmediata. Cuando la solicitud formal se refiera o incluye a varios sujetos, y uno o varios de ellos se allanaren a la solicitud planteada o decidieran entregarse voluntariamente, se deberá resolver la misma de conformidad con el párrafo precedente, sin perjuicio de seguir con el trámite de extradición iniciado para las otras personas." El artículo 4 de la misma ley establece: Efectos del allanamiento o entrega voluntaria. "El allanamiento a la solicitud formal de extradición o entrega voluntaria al Estado Requirente suspenderá el procedimiento de extradición pasiva para quien se allane. La petición de allanamiento o de entrega voluntaria deberá ir acompañada de la renuncia expresa a cualquier recurso o acción interpuesta ante cualquier órgano jurisdiccional o constitucional". Así también el Artículo XII del Tratado de Extradición establece: "Todos los objetos encontrados en poder del acusado y obtenidos por medio del acto de que le acusa, o que puedan servir de prueba del delito por el cual se pide su extradición, serán secuestrados y entregados con su persona, si así lo ordena la autoridad competente...". En ese orden de ideas este tribunal concluye que es procedente aplicar el Tratado de Extradición vigente entre los Estados

7

Unidos de América y el Estado de Guatemala, la Convención Suplementaria a dicho Tratado, Convención de las Naciones Unidas Contra la Corrupción y la Ley Reguladora del Procedimiento de Extradición.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**V) DE LOS FUNDAMENTOS DE HECHO:** En el presente caso, en audiencia de esta misma fecha, convocada para resolver la situación jurídica del solicitado en extradición ciudadano panameño **RICARDO ALBERTO MARTINELLI LINARES;** enterado que está siendo formalmente requerido por el Gobierno de los Estados Unidos de América y de las pruebas remitidas por el Estado requirente, porque en dicho país se le señala haber cometido actos delictivos relacionados con corrupción, manifiestó su deseo de allanarse voluntariamente a la solicitud de extradición, solicitando al tribunal que se realice las gestiones correspondientes a la brevedad posible para llevar a cabo su entrega al Gobierno de los Estados Unidos de América, renunciando a cualquier medio de impugnación y recurso. **El abogado defensor** Abraham Isaí Giron Morales, luego de escuchar a su patrocinado del deseo de allanarse a la presente solicitud, renunció a cualquier recurso para impugnar de conformidad al artículo 19 de la Ley del Organismo Judicial; y de conformidad al artículo 3 y 4 de la Ley Reguladora del Procedimiento de Extradición, solicitó se tenga por aceptada la voluntad de allanarse de su patrocinado y se suspenda el presente trámite de extradición, asimismo se autorice la devolución de los bienes que estarán a disposición del Ministerio Público que no tienen relación con el procedimiento de extradición. **El Ministerio Público,** conociendo la disposición del requerido de allanarse a la solicitud de extradición, solicitó se acepte la petición, se declare procedente dicha solicitud por los cargos descritos en la solicitud formal de extradición y

8

documentación suplementaria, se suspenda el trámite del procedimiento de extradición, se ponga al requerido a disposición del Ministerio de Relaciones Exteriores para su formal entrega al país requirente, se ordene el secuestro de los bienes que le fueron incautados al requerido en extradición siendo: a) Un teléfono celular posible color negro con verde, con logotipo de manzana en el revés, con un protector transparente, con tapadera y batería sellada, sin micro SD, SIM CLARO, 89502 01019 89664 4924F, IMEI 353894104609507. b) Un teléfono celular color negro con un logotipo de manzana en el revés, con un protector rojo, tapadera y batería sellada, sin micro SD, sin SIM, IMEI 356469101367503, para ser entregados con el señor Ricardo Alberto Martinelli Linares al país requirente; y en cuanto a los demás objetos incautados siendo: a) Dinero en efectivo, por la suma de € 2,425.00 EUROS y Q 55.00 QUETZALES, b) Una identificación diplomática del Parlamento Centroamericano; y c) Ocho tarjetas plásticas y una de metal a nombre de Ricardo Alberto Martinelli Linares queden a disposición del Ministerio Público, para que si la defensa o el requerido desean la devolución, se proceda conforme a ley, en virtud que no cumplen con el requisito que establece el artículo XII del tratado bilateral. Asimismo manifestó que presenta los siguientes documentos: 1) Oficio identificado como Referencia: UEAI 2020-012 de fecha nueve de julio de dos mil veinte, emitido por la Directora de Asuntos Jurídicos, Tratados Internacionales y Traducciones del Ministerio de Relaciones Exteriores del Gobierno de Guatemala, en el cual se indica que según información proporcionada por la Subdirección General de Protocolo y Ceremonial Diplomático, no se encuentra registrado Agente Diplomático con el nombre de RICARDO ALBERTO MARTINELLI LINARES y/o RICARDO MARTINELLI LINARES; 2) Oficio identificado como

9

Referencia UEAI 2020-012 de fecha doce de agosto de dos mil veinte, emitido por la Directora de Asuntos Jurídicos, Tratados Internacionales y Traducciones del Ministerio de Relaciones Exteriores del Gobierno de Guatemala, el cual contiene información del Parlamento Centroamericano relacionada con el señor RICARDO ALBERTO MARTINELLI LINARES; 3) Oficio identificado como FE-30128-2021 de fecha dos de noviembre de dos mil veintiuno emitido por la Fiscalía de Ejecución del Ministerio Publico en el cual consta que al requerido en extradición no se le ha otorgado criterio de Oportunidad, Suspensión Condicional de la Ejecución de la Pena y/o Procedimiento Abreviado; 4) Oficio identificado como 82-2021/sctr de fecha ocho de octubre de dos mil veintiuno, extendido por el Registro Central de Detenidos del Cetro Nacional de Análisis y Documentación Judicial; 5) Boleta Electrónica No. E2021-0037366 de fecha once de octubre de dos mil veintiuno, emitido por el Organismo Judicial, Corte Suprema de Justicia de Guatemala, en el cual consta que al requerido Ricardo Alberto Martinelli Linares no le aparecen antecedentes penales; y 6) Oficio No. 887-2021/WS de fecha tres de noviembre de dos mil veintiuno, emitido por la Unidad de Registro de Arraigos y Alertas Subdirección de Control Migratorio del Instituto Guatemalteco de Migración, en el cual consta que al señor Ricardo Alberto Martinelli Linares no tiene arraigo vigente pero si cuenta con alerta migratoria vigente. En ese orden de ideas, en base a lo manifestado por el requerido y su defensa, el tribunal concluye y sin más trámite, declarar procedente la formal extradición en contra de la persona antes relacionada, poniendo la misma a disposición del Ministerio de Relaciones Exteriores para que coordine con la autoridad del Estado solicitante y verifique su entrega, ya que según información presentada por el Ministerio Público, no se

10

encuentra sujeta a proceso penal en el país. Por lo que en virtud del allanamiento se suspende el presente procedimiento de Extradición. En virtud de lo manifestado por el Ministerio Público y en cumplimiento del Artículo XII del Tratado de Extradición se declara el secuestro de los siguientes objetos: a) **Un teléfono** celular posible color negro con verde, con logotipo de manzana en el revés, con un protector transparente, con tapadera y batería sellada, sin micro SD, SIM CLARO, 89502 01019 89664 4924F, IMEI 353894104609507. b) **Un teléfono** celular color negro con un logotipo de manzana en el revés, con un protector rojo, tapadera y batería sellada, sin micro SD, sin SIM, IMEI 356469101367503, los cuales deben ser entregados al país requirente juntamente con el ciudadano panameño RICARDO ALBERTO MARTINELLI LINARES; y se pone a disposición del Ministerio Publico los objetos incautados al requerido en extradición, siendo los siguientes: a) Dinero en efectivo que asciende a 2,425 EUROS y 55 QUETZALES, b) Una identificación diplomática del Parlamento Centroamericano; y c) Ocho tarjetas plásticas y una de metal a nombre de Ricardo Alberto Martinelli Linares, para que si la defensa o el requerido desean la devolución, se proceda conforme a la ley, en virtud que no cumplen con el requisito que establece el artículo XII del tratado bilateral.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**VI) PARTE RESOLUTIVA:** Este Tribunal con base en lo considerado y en lo que para el efecto preceptúan los Artículos: 6, 12, 14, 17, 27, 149 de la Constitución Política de la República de Guatemala; 23 y 44 de la Convención de las Naciones Unidas Contra la Corrupción; I, III, IV, V, VII, VIII, XI, y XII del Tratado de Extradición suscrito entre Guatemala y los Estados Unidos, y I, II y III de la Convención Suplementaria al Tratado de Extradición, 2, 3, 4, 17, 19, 22, 29 de la Ley Reguladora del Procedimiento de Extradición, 141, 142, 143, de la Ley del Organismo

11

Judicial, **AL RESOLVER POR UNANIMIDAD DECLARA: I)** PROCEDENTE LA **FORMAL EXTRADICCIÓN,** del ciudadano panameño **RICARDO ALBERTO MARTINELLI LINARES,** en virtud del allanamiento a la solicitud de extradición; por lo anteriormente considerado; **II)** Se formaliza la detención provisional del requerido, hasta que se haga efectiva su entrega al Estado requirente; **III)** Ofíciese a la Policía Nacional Civil para dejar sin efecto la orden de detención dictada en contra del requerido; **IV)** Se suspende el presente procedimiento de Extradición, en virtud de allanamiento; **V)** Con certificación de los pasajes más importantes del trámite judicial y del fallo que decretó la extradición, a través de la Secretaría de la Corte Suprema de Justicia, comuníquese y póngase a disposición del Ministerio de Relaciones Exteriores para que se haga efectiva su entrega; **VI)** Se ordena el secuestro de los dos teléfonos individualizados anteriormente, con el objeto que sean entregados juntamente con el requerido en extradición a las autoridades de los Estados Unidos de América; **VII)**  Queda a disposición del Ministerio Público los objetos detallados en la presente resolución, de los cuales si la defensa o el requerido desean la devolución se proceda conforme a la ley, en virtud que no cumplen con el requisito que establece el artículo XII del tratado bilateral; **VIII)** Notifíquese.

**ABOGADO SAÚL ORLANDO ÁLVAREZ RUIZ**
**JUEZ PRESIDENTE**

**CÉSAR AUGUSTO AMÉZQUITA RUANO**
**JUEZ**

**ABOGADO OSCAR ROLANDO DE LEON COLOMA**
**JUEZ**

**LICENCIADA BERTA PATRICIA AMAYA AYALA**
**SECRETARIA**

12