

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AES | *271 Cadman Plaza East* |
| F. #2019R00102 | *Brooklyn, New York 11201* |

December 10, 2021

<u>By Email and ECF</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>United States v. Ricardo Alberto Martinelli Linares</u>
     <u>Criminal Docket No. 12-65 (RJD)</u>

Dear Judge Levy:

  The government respectfully submits this letter in support of its request that the Court issue a permanent order of detention as to the defendant Ricardo Alberto Martinelli Linares ("Ricardo Martinelli Linares" or the "defendant"), and in response to the letter filed by the defendant earlier today (ECF Dkt. 34 ("Def Mem.")).

  The defendant, a citizen of Panama and Italy, has been indicted for conspiracy to commit money laundering, as well as additional substantive money laundering charges, for laundering tens of millions of dollars in bribe payments on behalf of a close relative who was a high-ranking government official in Panama ("Panama Government Official") from 2009 until 2014. Ricardo Martinelli Linares's co-defendant brother, Luis Enrique Martinelli Linares ("Luis Martinelli Linares"), who, similar to the defendant, was recently extradited to the United States from Guatemala, was ordered detained by the Honorable Magistrate Judge Marcia M. Henry on November 16, 2021,[1] an order which, after having been appealed, was affirmed by the Honorable

---

[1] On November 16, 2021, Judge Henry found that the defendant posed a "serious risk" that he will not appear, based on findings that: (i) the defendant is not a U.S. citizen whose family resides in Panama, a non-extradition country; (ii) the defendant has access to financial resources "substantially + globally"; (iii) the defendant has the "ability to draw on politically influenced parties to assist with evasion; (iv) the nature of the charges; (v) the defendant's history; and (vi) "characteristics as stated on the record." (ECF Dkt. 29; <u>see also</u> Transcript of Bail Hearing, November 15, 2021, attached hereto as Exhibit A; Government's Letter Seeking Detention (ECF Dkt. 22); Government's Sealed Letter dated November 15, 2021, attached hereto as Exhibit B)).

Judge Raymond J. Dearie on November 23, 2021.[2]  On December 2, 2021, Luis Martinelli Linares pleaded guilty to conspiring with Ricardo Martinelli Linares and others to commit money laundering in connection with the charged scheme; he continues to be detained while awaiting sentencing, which is scheduled for May 2022.

   Like Luis Martinelli Linares, Ricardo Martinelli Linares previously engaged in plea discussions with the government to resolve his exposure for this criminal conduct, but in June 2020—shortly before finalizing the details of a plea, and without notifying the government—he slipped across the United States border to the Bahamas by boat, and boarded a private jet in an attempt to return to Panama, a country in which he has extensive political connections and which does not extradite its citizens.  When the plane was turned away from Panama due to COVID-19 travel restrictions and landed in Costa Rica, then El Salvador, the defendant redoubled his efforts to get to Panama, traveling by car to the Guatemalan border, where he entered on unsigned and invalid diplomatic credentials in an attempt to get to a private family jet that would fly him to Panama.  The defendant was ultimately arrested at the international airport in Guatemala City, Guatemala as he and his brother attempted to board the private family jet, which was set to fly to Panama, on an arrest warrant issued out of this district, and, after fighting extradition for more than a year—and only after his brother's appeals to avoid extradition failed—finally consented to extradition and is being returned to the United States for prosecution.

   As set forth more fully below, the defendant is a substantial and proven flight risk based upon: (1) the seriousness of the charged offenses and the overwhelming evidence that supports them; (2) his prior actions to evade prosecution in the United States; (3) the defendant's lack of ties to the United States, extensive financial resources and foreign political connections; and (4) his status as a citizen of Panama, which does not extradite its citizens to the United States.  See 18 U.S.C. § 3142.  The defendant's arguments to the contrary are unavailing: the fact that the defendant has indicated he intends to plead guilty underscores the strength of the evidence, a factor that weighs in favor of detention, see id., and once the defendant has pled guilty, the presumption shifts in favor of detention unless the Court can make a finding by clear and convincing evidence that the defendant is not a risk of flight, 18 U.S.C. § 3143(a), a burden the defendant cannot meet here.  Moreover, the bail package proposed by the defendant in his filing is less robust than the bail package proposed by Luis Martinelli Linares and rejected by Judge Dearie, who "wholeheartedly agree[d]" that the such bail package was insufficient.  (See Exhibit C at 29).

---

[2] "In most instances, we have to wonder whether or not someone is a flight risk.  I don't think we have to wonder whether this gentleman continues to be a flight risk.  In very real terms, his intent to flee is even greater now… So as much I'd like to disagree with Judge Henry, I can't help but wholeheartedly agree that the proposed conditions do not reasonably assure for this gentleman to return throughout the progresses of this prosecution." (Transcript of Bail Hearing, November 23, 2021, attached hereto as Exhibit C, at 28-29; see also Government's Letter in Further Support of Detention, attached hereto as Exhibit D).

I.   Background

   A.   The Offense Conduct, the Pending Charges and the Government's Evidence

   The government's investigation in this case stems from a larger investigation into a massive bribery and money laundering scheme related to Brazilian holding company Odebrecht S.A. ("Odebrecht") and its subsidiary Braskem, S.A. ("Braskem"), a Brazilian petrochemical company. Between approximately 2001 and 2016, Odebrecht paid approximately $788 million in bribes to government officials, their representatives and political parties in a number of countries in order to win business in those countries. The criminal conduct was directed by the highest levels of the company, with the bribes paid through a complex network of shell companies, off-book transactions and off-shore bank accounts. As part of the scheme, Odebrecht and its co-conspirators created and funded an elaborate, secret financial structure within the company that operated to account for and disburse bribe payments to foreign government officials and political parties. This structure ultimately became known as the "Division of Structured Operations" and effectively functioned as a stand-alone bribe department within Odebrecht. On December 21, 2016, Odebrecht and Braskem pled guilty in the Eastern District of New York to separate criminal informations charging each with conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act for their role in the bribery and money laundering schemes. See United States v. Odebrecht, 16-CR-643 (RJD); United States v. Braskem, 16-CR-643 (RJD).

   With respect to the above-captioned case, the government's investigation determined that between approximately August 2009 and September 2015, Ricardo Martinelli Linares and his brother Luis Martinelli Linares, together with others, conspired to facilitate the payment of bribes from Odebrecht to Panama Government Official and to conceal and spend the proceeds of that criminal conduct in the United States. During this time, Odebrecht won and maintained billions of dollars in contracts from the government of Panama for several of the country's highest profile public works projects, including a project that was a signature campaign promise of Panama Government Official. Beginning in approximately 2009, Ricardo Martinelli Linares, along with Luis Martinelli Linares, opened and managed secret bank accounts held in the names of shell companies in foreign jurisdictions for the sole purpose of receiving, transferring, concealing and spending bribe payments that Odebrecht made for the benefit of Panama Government Official. Ricardo Martinelli Linares and Luis Martinelli Linares served as the signatories on the shell company bank accounts in Switzerland that initially received the bribes, and they authorized wire transfers through a structure of shell company bank accounts to conceal and spend the bribery proceeds. In total, the shell company bank accounts opened and controlled by the defendant received approximately $28 million in bribe proceeds from Odebrecht for the benefit of Panama Government Official, $19 million of which were transferred through correspondent bank accounts in the United States.

   Ricardo Martinelli Linares and Luis Martinelli Linares also conducted financial transactions to and through the United States to conceal the bribery proceeds. Many of these financial transactions were in U.S. dollars and were made through U.S. banks, some of which were located in New York.

On February 4, 2021, a grand jury sitting in the Eastern District of New York returned a five-count indictment (the "Indictment") charging Ricardo Martinelli Linares and Luis Martinelli Linares with money laundering offenses for the above-described criminal conduct. Both defendants were charged with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and two substantive counts of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Luis Martinelli Linares was also charged with two counts of engaging in transactions in criminally derived property, in violation of 18 U.S.C. § 1957.

The government's charges against the defendant rely, in part, on the following evidence: (1) foreign bank records for accounts that were used by Ricardo Martinelli Linares to receive, conceal, and transfer the bribe payments from Odebrecht for the benefit of Panama Government Official; (2) U.S. bank records evidencing the use of U.S. correspondent banks for the bribe payments and the further transferring of those funds to conceal their illegal nature and source; (3) U.S. bank records and corporate receipts evidencing the spending by Luis Martinelli Linares of bribe proceeds to purchase a yacht and a luxury condominium in the United States; (4) email records and other corporate records from Odebrecht corroborating the scheme; and (5) witness statements of former Odebrecht employees and agents. The government is also in possession of voluminous records from the secret electronic database that the Division of Structured Operations used to communicate and maintain records regarding the slush funds and bribes paid on behalf Odebrecht. This database contains email communications, payment information, wire transfer requests, bank records and other records detailing the scheme and specifically the bribes that were paid to benefit Panama Government Official to bank accounts associated with Ricardo Martinelli Linares. The above-described evidence, among other evidence, demonstrates Ricardo Martinelli Linares's participation in a scheme to assist Odebrecht in making approximately $28 million in bribe payments to benefit Panama Government Official, and steps the defendant took to further transfer, conceal, and spend those bribery proceeds.

B. The Defendant's Flight from Prosecution

Following Odebrecht's guilty plea in December 2016, Ricardo Martinelli Linares, who was then living in the United States, met with the government on numerous occasions in connection with its ongoing investigations related to Odebrecht. The defendant and Luis Martinelli Linares also engaged in plea discussions with the government through counsel. By in or about June 2020, those plea discussions had advanced to the stage that the government and counsel for the defendants were exchanging drafts of plea documents and discussing the logistics of pleas by the defendants to charges related to the criminal conduct detailed above.

On or about June 25, 2020, the government learned that Ricardo Martinelli Linares and Luis Martinelli Linares had—without any notice to the government—traveled by an unknown vessel to the Bahamas, evading United States border controls, and then boarded a private jet to fly to Panama. The defendant and Luis Martinelli Linares were accompanied on this trip by Luis Martinelli Linares's wife and children, and it appeared the travel had been carefully planned in advance. However, the private jet was turned away from Panama due to COVID-19 travel restrictions; it first landed in Costa Rica on an emergency approval, and then made an authorized landing in El Salvador. In the meantime, the government filed a criminal

complaint charging the defendants for the above-described criminal conduct, and arrest warrants for both defendants were issued from this District.

Ricardo Martinelli Linares and Luis Martinelli Linares then traveled by Uber from San Salvador, El Salvador to the border with Guatemala, which was not permitting visitors into the country at that time due to COVID-19 travel restrictions. The defendants overcame the ban by presenting unsigned diplomatic credentials at the border, falsely representing themselves as officials of the Central American Parliament to gain entry to Guatemala. In spite of Panama's complete lockdown due to the COVID-19 pandemic, prohibiting the entry of any person into the country, the defendants, who have notable and significant political connections in Panama, were able to obtain emergency humanitarian authorization from Panama's Minister of Health, granting them permission to enter the country. In the meantime, the government sought the defendants' apprehension in Guatemala through formal treaty processes, and on or about July 6, 2020, both defendants were arrested at el Aeropuerto Internacional la Aurora in Guatemala City, Guatemala as they were attempting to board their family's private jet to Panama, having obtained the emergency humanitarian authorization.

Following Ricardo Martinelli Linares's arrest in Guatemala, the government submitted a full extradition request to Guatemalan authorities. For over a year, Ricardo Martinelli Linares fought his extradition to the United States, filing multiple recusal motions and other preliminary challenges. It was only after the Guatemalan Fifth Criminal Sentencing Court granted the request by the United States to extradite Luis Martinelli Linares, a decision thereafter affirmed by the Guatemalan Court of Appeals, Criminal Branch, that Ricardo Martinelli Linares consented to extradition. On November 22, 2021, the Guatemalan Ministry of Foreign Affairs (MINEX) notified the United States, via diplomatic note, that the extradition was final and Ricardo Martinelli Linares was ready for surrender to the United States. On December 10, 2021, the defendant was extradited to the United States.

II. The Defendant is a Proven and Substantial Flight Risk and Should Be Detained

A. Applicable Law

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e) (detention warranted where "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the defendant, and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The government is entitled to present evidence by way of proffer. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542

5

(same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

B. Argument

The evidence proffered by the government demonstrates by a preponderance of evidence that, similar to his co-defendant brother, Ricardo Martinelli Linares is a significant and demonstrated flight risk.

1. The Seriousness of the Charges and the Strength of the Evidence

The evidence in this case is overwhelming. As detailed above, the government has collected bank records, emails, and other corporate records showing that Ricardo Martinelli Linares (1) opened and managed shell company bank accounts in Switzerland which were used to receive bribe payments from Odebrecht to benefit Panama Government Official; (2) opened and managed additional offshore shell company bank accounts which were used to further transfer and conceal the bribe proceeds; and (3) caused further transactions into and out of the United States with the proceeds of those same violations of Panamanian law, in part to conceal the nature, source, and control of the funds. In addition to the documentary evidence, the government has witnesses who will testify about the defendant's knowledge of and role in facilitating bribe payments on behalf of Odebrecht to benefit Panama Government Official, and the defendant's knowledge that he and Luis Martinelli Linares would personally receive funds from those bribe payments. Set against the background of Odebrecht's billions of dollars in high-profile public contracts and the defendant's close familial relationship to Panama Government Official, these documents and witnesses demonstrate clearly that the defendant knowingly and willfully laundered tens of millions of dollars in corrupt payments over many years.

These crimes are also extremely serious. Calculating the losses caused by the defendant and his co-conspirators under the United States Sentencing Guidelines ("USSG" or the "Guidelines"), the government estimates that if convicted of any of the charges at trial, the

defendant's applicable total offense level would be 34.[3]  Assuming a Criminal History Category of I, Ricardo Martinelli Linares would face a recommended Guidelines' sentence of 151 to 188 months imprisonment.

        2.        The Defendant Previously Sought to Flee Prosecution in the United States

As detailed above, at the time of his flight from the United States in June 2020, Ricardo Martinelli Linares had met with the government multiple times and had engaged in extensive plea negotiations that were close to being finalized to resolve the very criminal conduct at issue in this case.  As a result, he was well aware of the nature of the charges he would be facing and the strength of the evidence already gathered in the United States.  Just two days after the government had communicated with his attorneys regarding some final terms for the plea agreement, Ricardo Martinelli Linares, along with Luis Martinelli Linares, slipped out of the United States, without any notice, in a country-hopping effort involving boats, private planes and unsigned and invalid diplomatic credentials, in an effort to get to Panama and escape prosecution in the United States.[4]  Once apprehended in Guatemala, Ricardo Martinelli Linares then spent over a year filing recusal motions and challenges, in an effort to fight his extradition back to the United States.  It was only after his brother and co-defendant was ordered to be extradited by a Guatemalan court that Ricardo consented to extradition.

Given Ricardo Martinelli Linares's actions over the past several years, it is clear that he will do anything to avoid prosecution in the United States and return to Panama, even despite the separate criminal charges pending against him in that country.  His actions in June 2020, while those charges were also pending—undertaking an elaborate scheme to flee from the United States with his family during plea discussions, evade U.S. and Guatemalan border controls, and return to Panama by private jet—are alone sufficient to demonstrate by a preponderance that he represents a significant flight risk, as they demonstrate this defendant's extraordinary ability and willingness to take the same actions again if given the opportunity.

---

[3] Based on the government's estimate, the defendant would be subject to a base offense level of 8 (USSG § 2S1.1(a)(2)), and enhancements for a loss amount of more than $25 million (USSG § 2B1.1(b)(1)(L)), money laundering (USSG § 2S1.1(b)(2)(B)) and the use of sophisticated means (USSG § 2S1.1(b)(3)).

[4] The defendant suggests that the reason he and his brother fled was because they were concerned that they would not receive a deferred action letter. (Def. Mem. at 3).  As detailed in the government's November 23, 2021 filing, however, this stated reason for his flight is different than one previously provided to the government.  (See Exhibit D at 4).  Moreover, at the time that the defendant fled, the government's request for deferred action was in process, and the defendant's own immigration attorney expressed no sense of urgency about the timing of the approval of that request.  (Id.).

       3.       The Defendant Lacks Ties to the EDNY, and Has Significant Financial Resources and Foreign Political Connections

Ricardo Martinelli Linares is a citizen of both Panama and Italy, and holds passports from both countries. He is the close relative of the former high-ranking Panama Government Official,[5] the recipient of the bribes at issue in this case, and has extensive political connections in Panama. Most of the defendant's family is also believed to reside in Panama. The defendant has no known ties to the Eastern District of New York, including no familial ties, assets or known employment.

The defendant also has access to significant financial resources. Ricardo Martinelli Linares is a member of a family in Panama with an enormous fortune. The defendant's family owns a large and successful retail chain in Panama as well as other businesses and investments. In 2009, the defendant worked for his family's business, serving as a Director overseeing acquisitions and development, a role that he continued in until at least 2016. As detailed above, the defendant has access to a private plane owned by his family, which he previously used in an effort to return to Panama to evade prosecution in the United States.

Given the defendant's lack of any ties to the Eastern District of New York, his substantial foreign ties and strong political connections in Panama, and his considerable financial resources and access to a private plane, he is a significant flight risk.

       4.       The Defendant Is a Citizen of Panama, Which Does Not Extradite its Own Citizens

Ricardo Martinelli Linares is a citizen of Panama, a country that does not extradite its citizens.[6] As a result, if the defendant were to succeed in fleeing to Panama, the U.S. government would be unable to extradite him. Courts in this circuit and other circuits have routinely found similarly-situated defendants—i.e., individuals who were charged in foreign corruption and fraud cases who were citizens of countries that did not extradite its citizens—to pose a risk of flight, and as a result ordered pre-trial detention. See, e.g., United States v. Boustani, 18-CR-681(WFK), Docket Entry 39 (E.D.N.Y. 2018) (in a fraud and bribery case, holding that the seriousness of the charges, along with the defendant's wealth and Lebanese citizenship with ties to countries without extradition, warranted detention, despite the defendant's offer of a significant cash bond and virtual private prison provided at the defendant's own cost); United States v. Thiam, 17-CR-47 (VM), Docket Entry 24 (S.D.N.Y. 2017) (ordering pretrial detention based on the seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's citizenship in France, a country that does not extradite its citizens although the defendant was also a citizen of the United States and a resident of New York); United States v. Pierucci, 12-CR-238 (JBA), Docket Entries 31 and 75 (D. Conn.

---

[5] The government provided additional information about Panama Government Official in a separate sealed filing on November 15, 2021. (See Exhibit B).

[6] See Panamanian Constitution, Article 24 (prohibiting extradition of Panamanian nationals).

8

2013) (ordering pre-trial detention based on the seriousness of the case and the evidence against the defendant, the defendant's lack of ties to the United States and defendant's French citizenship, although the defendant had lived and worked in Connecticut years before he was arrested); United States v. Cevallos, 19-CR-20284 (RS), Docket Entry 36 (S.D. Fla. 2019) (ordering pretrial detention based on seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's citizenship in Ecuador, a country that does not extradite its citizens, although the defendant had resided in the United States for about three years); United States v. Reyes, 17-CR-20747 (KMW), Docket Entry 20 (S.D. Fla. 2017) (ordering pretrial detention based on seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's strong ties to and citizenship in Ecuador, a country that does not extradite its citizens although the defendant had resided in the U.S. for over a year with his family); United States v. Schmidt, 16-CR-20394 (SFC) Docket Entry 73 (E.D. Mich. 2017) (affirming magistrate's order of pretrial detention of the defendant, a German citizen, in the Volkswagen diesel emissions matter, based in part on his citizenship in Germany, a country that does not extradite its citizens, notwithstanding the defendant's minimal ties to the U.S.). The same outcome is warranted here.

        C.        The Defendant's Arguments Are Unavailing

In his filing, the defendant argues that he is "not likely to flee" because he intends to plead guilty at a court appearance on December 14, and therefore he does not have "anything to gain" by fleeing between his plea and sentencing. (Def. Mem. at 6). He further argues that the proposed bail package will "reasonably assure his appearance" at future court proceedings in the United States. (Id. at 5). Neither of these arguments is persuasive. Moreover, Luis Martinelli Linares—who is almost identically situated to the defendant—made similar arguments in seeking bail in his case, all of which were rejected by Judge Dearie and Judge Henry.

First, the defendant contends that he would obtain "neither refuge nor immunity" if he were to flee to Panama because of the unresolved criminal case pending against him in Panama, and that he is incentivized to remain in the United States through sentencing in order to "obtain double jeopardy protection" for those charges. (Id. at 6). The government strongly disagrees. The defendant is closely connected to powerful political figures in Panama, including Panama Government Official, who retains significant influence over the current government. For example, during the defendant's flight from the United States, he apparently was able to use those connections to convince the Minister of Health to grant his brother entry into the country despite the existing and complete COVID-19 lockdown that barred all others, including other Panamanian citizens, from entering the country; this would have allowed the defendant to complete his escape had he and his brother not been arrested at the airport in Guatemala. These connections also helped the defendant get access to credentials that purported to show him as a member of the Central American Parliament, which he is not. As a result, the government has no basis to believe that these connections might not also be brought to bear to dismiss or otherwise influence the pending charges in Panama should the defendant return there. Moreover, there is no indication that the charges in Panama would carry the same potential penalties as here: specifically, a Guidelines estimate in excess of 10 years and almost $19 million in forfeiture. The defendant may well make a calculated risk—as he did when he fled in June 2020, while the same charges were also pending in Panama—that he will ultimately be better off fleeing to Panama and simply resolving that case. Notably, Luis Martinelli Linares also made similar

9

arguments in support of his release (he similarly expressed an intention to plead shortly after his arrival in the United States, and subsequently did so), which were rejected by both Judge Henry and to Judge Dearie. (See, e.g., Exhibit A at 7 ("his entire position is that he's going to plead guilty"), Exhibit C at 9 ("Luis Martinelli has come back to this country to plead guilty to the top count of the indictment and accept his punishment").

      Second, even if the defendant were able to demonstrate that he was not a flight risk, the bail package proposed by the defendant is insufficient to secure his appearance. In addition to political connections that increase his likelihood of flight (including his ability to access official-looking documents and that can be used cross borders), the defendant has access to significant personal and family wealth. The $1 million cash that the defendant is willing to post represents a fraction of the resources that he has at his disposal, and is significantly less than the $19 million in forfeiture that he will be responsible for once he pleads guilty, the majority of which has not yet been paid; thus it would cost him far less to flee than to remain and fulfill those obligations. Moreover, the defendant has provided no information about the "likely co-signers" other than that they are "close friends" who own property in the United States; it is not clear what, if any, moral suasion is offered by these suretors, nor is it clear that those individuals would post property that would represent a significant loss to them should the defendant flee. And it is significant that in connection with his bail appeal, Luis Martinelli Linares proposed a larger bail package—$5 million secured by $1.5 million in cash, and the remainder secured in part by properties owned by various suretors—which Judge Dearie "wholeheartedly agree[d]" was not sufficient.[7] (See Exhibit C).

      Finally, as noted above, the fact that the defendant intends to plead guilty makes clear the strength of the evidence against him, a factor that weighs in favor of detention. See 18 U.S.C. § 3142(g)(2). Moreover, once the defendant has pled guilty, the presumption shifts in favor of detention unless the Court can make a finding by clear and convincing evidence that the defendant is not a risk of flight, a burden the defendant cannot meet here. See 18 U.S.C. § 3143(a); Abuhamra, 389 F.3d at 319-20 (2d Cir. 2004).

---

[7] Luis Martinelli Linares proposed a slightly smaller $3 million bail package at his initial appearance (ECF Dkt. 24), which was similarly rejected by Judge Henry.

III.    Conclusion

For the reasons stated above, the government respectfully submits that the Court should enter a permanent order of detention for Ricardo Martinelli Linares.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Alixandra Smith
Assistant U.S. Attorney
(718) 254-6370

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
Department of Justice

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
Department of Justice

By:    /s/
Michael Culhane Harper
Trial Attorney
(202) 616-5224

By:    /s/
Michael B. Redmann
Barbara Levy
Trial Attorneys
(202) 436-6891

cc:  The Honorable Raymond J. Dearie (by ECF and email)
     Sean Hecker, Esq. (by ECF and email)