1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   --------------------------------x
                                            21-CR-065(RJD)
3   UNITED STATES OF AMERICA,
                                            United States Courthouse
4           Plaintiff,                      Brooklyn, New York

5           -against-                       December 14, 2021
                                            12:30 p.m.
6   RICARDO ALBERTO MARTINELLI LINARES,

7           Defendant.
    --------------------------------x
8
              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
9            BEFORE THE HONORABLE RAYMOND J. DEARIE
                  UNITED STATES DISTRICT JUDGE
10
    APPEARANCES
11  For the Government:        UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
12                             271 Cadman Plaza East
                               Brooklyn, New York 11201
13                             BY:  ALIXANDRA E. SMITH, AUSA
                                      -and-
14                             UNITED STATES DEPARTMENT OF JUSTICE
                               1400 New York Avenue, NW
15                             Washington, D.C. 20530
                               BY:  MICHAEL B. REDMANN, ESQ.
16                                   MICHAEL C. HARPER, ESQ.

17

    For the Defendant:         KAPLAN HECKER & FINK LLP
18                             350 Fifth Avenue, Suite 7110
                               New York, New York 10118
19                             BY:  SEAN HECKER, ESQ.
                                    JUSTIN HORTON, ESQ.
20

21  Court Reporter:            Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (718)804-2777
22                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
23

24  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
25

PROCEEDINGS

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Good afternoon, everyone.  Please have a

4  seat.

5              THE COURTROOM DEPUTY:  Good afternoon.  This is a

6  criminal cause for pleading in the matter of U.S.A. versus

7  Ricardo Martinelli Linares, docket number 21-CR-65.

8              Can the attorneys please state their appearance for

9  the record starting with counsel for the government.

10              MS. SMITH:  Good afternoon, your Honor.  Alixandra

11  Smith for the United States and with me are Michael Redmann

12  and Michael Harper of the Department of Justice.

13              THE COURT:  Good afternoon, everyone.

14              MR. HECKER:  Good afternoon, your Honor.  Sean

15  Hecker from Kaplan Hecker & Fink for Mr. Martinelli Linares

16  and with me at counsel table is my colleague, Justin Horton.

17              THE COURT:  Gentlemen, good afternoon.

18  Mr. Martinelli Linares, good afternoon.

19              THE DEFENDANT:  Good afternoon, Judge, your Honor.

20              THE COURT:  All right.  Are we ready to proceed?

21              MR. HECKER:  We are.

22              THE COURT:  Swear the defendant, please.

23              THE COURTROOM DEPUTY:  Mr. Martinelli Linares, can

24  you please stand, raise your right hand.

25              (The defendant, RICARDO ALBERTO MARTINELLI LINARES,

PROCEEDINGS

1   was sworn/affirmed.)

2            THE DEFENDANT:  I swear.

3            THE COURTROOM DEPUTY:  Thank you.

4            THE COURT:  All right.  Bear with me just a second.

5            So, Mr. Martinelli Linares, I have to ask you a

6   number of questions, as I'm sure Mr. Hecker has told you.  If

7   there's anything I say that isn't entirely clear to you, feel

8   free to say so I'll do my best to clarify, rephrase any

9   question.  If you wish at any time to confer with counsel,

10  simply ask me and I'll give you whatever time you need to

11  speak privately with your lawyers, okay?

12           THE DEFENDANT:  Thank you, Judge.

13           THE COURT:  You should also bear in mind as we

14  proceed that you are now under oath.  That means that your

15  answers to my questions must be truthful.  If they were not in

16  any material way, you could subject yourself to further

17  charges for the offense of perjury, which is lying while under

18  oath.

19           Do you understand that?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Could you state your full name please.

22           THE DEFENDANT:  Ricardo Alberto Martinelli Linares.

23           THE COURT:  How old are you, sir?

24           THE DEFENDANT:  Forty-two years old.

25           THE COURT:  What schooling or formal education have

4

PROCEEDINGS

1   you had?

2          THE DEFENDANT:  I have two master's degrees and a

3   bachelor degree.

4          THE COURT:  Are you currently or have you recently

5   been under the care of a physician, medical personnel,

6   anything of that sort?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Have you had any medication within the

9   last 24 hours?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Have you ever had a problem with alcohol

12   or drugs?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Are you able to concentrate on what I'm

15   saying to you now, sir?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Have you had sufficient time to confer

18   with counsel in preparation for your offering of this plea?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Counsel, in your discussions with your

21   client have you at any time had difficulty communicating with

22   him?

23          MR. HECKER:  Not at all.

24          THE COURT:  In your judgment, does he understand the

25   rights he'll be waiving by pleading guilty?

PROCEEDINGS

1              MR. HECKER:  He does.

2              THE COURT:  Is he, in your judgment, competent to

3    proceed and capable of understanding the nature of these

4    proceedings?

5              MR. HECKER:  Yes, your Honor.

6              THE COURT:  Mr. Martinelli Linares, are you

7    satisfied, sir, with the representation counsel has provided

8    to you in the course of this case?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you wish to have him continue in his

11   role as your counsel?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  All right.  Now, sir, the next series of

14   questions are designed to establish as a matter of record that

15   you understand the rights that you have and the rights that

16   you give up by pleading guilty.  Obviously, primary among them

17   is the right to go to trial.  You have an absolute right to

18   continue in your plea of not guilty.

19             Do you understand that?

20             THE DEFENDANT:  Yes, I understand.

21             THE COURT:  Even if you are guilty, you have an

22   absolute right to plead not guilty and to put the government

23   to the burden of proving your guilty to the satisfaction of a

24   jury and beyond a reasonable doubt.

25             Do you understand?

PROCEEDINGS

1            THE DEFENDANT:  I understand, your Honor.

2            THE COURT:  So that under our laws you would be

3     entitled to a speedy and public trial by jury with the

4     assistance of counsel on the charges reflected in the

5     indictment.

6            Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  At trial you'd be presumed innocent of

9     the charges and I would instruct the jury to that effect in no

10    uncertain terms.  The government would have the obligation to

11    attempt to overcome this presumption of innocence and prove

12    you guilty by competent evidence and, as I said, beyond a

13    reasonable doubt.  You, sir, would have no obligation

14    whatsoever.  You could do nothing, say nothing, simply put the

15    government to the burden of trying to convince the jury of

16    your guilt.

17            Do you understand that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  During the course of the trial -- excuse

20    me.  And if the government were to fail for any reason,

21    technical or otherwise, the jury would be required under my

22    instructions to find you not guilty even if you committed this

23    offense.

24            Do you understand that?

25            THE DEFENDANT:  Yes, your Honor.

PROCEEDINGS

1          THE COURT:  Now in the course of the trial the

2     witnesses for the government would have to come here to court

3     and testify under oath in your presence, the presence of

4     counsel of course.  You would have the right therefore to

5     confront each of these witnesses face to face here in the

6     courtroom.  You'd have the right, when appropriate, to object

7     to evidence offered by the government, you'd have to the right

8     to cross examine each of the witnesses, you'd have the right

9     to offer evidence in your own defense, but you'd be under no

10    obligation to do so, and you would have the right to compel

11    the attendance of witnesses and the production of possible

12    evidence or documents and such through the use of a court

13    order or subpoena, as we commonly refer to it.

14          Do you understand that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  At trial, sir, you would have the right

17    to testify in your own defense but under no obligation to do

18    so.  You have an absolute constitutional right or privilege,

19    as we refer to it, to remain silent and no one can make you

20    testify, not your lawyers, not the government's lawyers, not

21    even the Court.  You have an absolute right to remain silent.

22    And if you chose to avail yourself of that right, and remain

23    silent, and if counsel requested it of me, as he likely would,

24    at trial I would instruct the jury in the strongest possible

25    terms that under no circumstances could they, the jury, hold

PROCEEDINGS

1    your decision against you.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Okay.  And finally, the decision whether

5    or not to testify, sir, is yours to make.  Not counsel's, all

6    right.  It's a personal decision that you make, obviously one

7    you would make in consultation with your attorneys, but

8    ultimately the decision is yours.

9              Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  All right.  So then, finally, before I

12   can actually accept your plea -- excuse me a second.  All

13   right, I'm ahead of myself.

14             So if you plead guilty, all right, and I accept your

15   plea, you'd be giving up all these rights.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  There will be no trial, with the

19   possible exception of appeal which I'll explain in a moment,

20   there is no right to an appeal.  I will simply enter a

21   judgment of guilty based upon what you tell me, based upon

22   your plea of guilty.

23             Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Then, finally, before I can actually

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1    accept your plea, I'm required under the rules to satisfy

2    myself that you are in fact guilty of the offense charged in

3    Count One of this indictment.  To do that in just a few

4    minutes I'm going to ask you some questions about the charge,

5    in responding to those questions obviously you give up your

6    right to remain silent, you'll give up your constitutional

7    right not to incriminate yourself, and you'll be called upon

8    here in open court this afternoon to acknowledge your guilt.

9    Do you understand that?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  Are you willing then to give up your

12   right to a trial and these other rights I have explained?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Do you have any questions at all?

15               THE DEFENDANT:  No, your Honor.

16               THE COURT:  All righty.  I have before me a document

17   that bears the caption of the case, it is an agreement between

18   the parties.  It is a 12-page typewritten document containing

19   numbered paragraphs -- my hands aren't working here --

20   containing 15 numbered paragraphs.

21               You're familiar with this document, sir?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  Have you read it?

24               THE DEFENDANT:  Yes, your Honor.

25               THE COURT:  Have you read it carefully?

PROCEEDINGS

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Have you reviewed it with counsel?

3           THE DEFENDANT:  I have, your Honor.

4           THE COURT:  Has counsel answered any questions you

5    might have?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  There's a lot of information in this

8    document, fair to say?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Is it also fair to say that this

11   document is an important document in terms of your future?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Have you reviewed it with that degree of

14   care?

15          THE DEFENDANT:  Very thoroughly, your Honor.

16          THE COURT:  As far as you understand, sir, is your

17   agreement with the United States Attorney fully and accurately

18   set out in this written plea agreement?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Mark the agreement Court Exhibit 1,

21   Catherine, to the proceeding.

22          Are there any other promises, sir, understandings of

23   any kind that have contributed to your decision to offer this

24   plea of guilty that are not written down in this plea

25   agreement?

PROCEEDINGS

1          MR. HECKER:  Your Honor, before he answers that can

2     we just establish that the factual proffer in support of the

3     plea is attached as an exhibit to the plea agreement.

4          THE COURT:  I'm more than happy to.  It's not

5     attached to mine, but I take your word for it, Mr. Hecker.

6          MR. HECKER:  Thank you, Judge.

7          THE COURT:  I have the plea agreement, I just don't

8     have that -- yes.

9          MR. REDMANN:  Your Honor, paragraph 6 of the plea

10    agreement incorporates that as Exhibit A.

11         THE COURT:  All right.  Okay, fair enough.

12    Including a three-page proffer statement in support of the

13    guilty plea which is now attached to and part of the agreement

14    itself.

15         And that I take it is a stipulated statement.

16         MR. REDMANN:  Correct, your Honor, and it's signed

17    by the defendant.

18         THE COURT:  I'm sorry?

19         MR. REDMANN:  That's correct, your Honor, and it's

20    signed by the defendant.

21         THE COURT:  Thank you for that, because I'm just

22    about to get to it.

23         You signed this agreement, sir?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  You signed it -- Mr. Hecker, you

PROCEEDINGS

1    witnessed the execution of the agreement?

2                 MR. HECKER:  I did.

3                 THE COURT:  Do you have any questions about this

4    agreement?

5                 THE DEFENDANT:  No, your Honor.

6                 THE COURT:  Okay.  Count One reads as follows:  In

7    or about and between August 2009 and September 2015, both

8    dates being approximate and inclusive, within the Eastern

9    District of New York and elsewhere, the defendants charged,

10   including Ricardo Alberto Martinelli Linares together with

11   others, did knowingly and intentionally conspire to conduct

12   offenses under Title 18, United States Code Sections 1956 and

13   1957 to wit:

14                To transport, transmit and transfer, and attempt to

15   transport, transmit and transfer monetary instruments and

16   funds from a place in the United States to and through a place

17   outside the United States and to a place in the United States

18   from and through a place outside the United States with the

19   intent to promote the carrying on of one or more specified

20   unlawful activities, to wit:  An offense against a foreign

21   nation involving bribery of a public official, in violation of

22   the Penal Code of the Republic of Panama, contrary to 18

23   U.S.C. Sections 1956(a)(2)(A);

24                to conduct and attempt to conduct financial

25   transactions involving the proceeds of one or more specified

PROCEEDINGS

1   unlawful activities, to wit:  an offense against a foreign

2   nation involving bribery of a public official, in violation of

3   the Penal Code of the Republic of Panama, knowing that the

4   property involved represented proceeds of some form of

5   unlawful activity, and knowing that the transaction was

6   designed in whole or in part to conceal and disguise the

7   nature, location, source, ownership and control of the

8   proceeds in the specified unlawful activity contrary to 18

9   United States Code, Section 1956(a)(1)(B)(i); and to engage in

10  and attempt to engage in a monetary transaction in criminally

11  derived property of a value greater than $10,000, such

12  property having been derived from one or more specified

13  unlawful activities; to wit:  an offense against a foreign

14  nation involving bribery of a public official, in violation of

15  the Penal Code of the Republic of Panama, contrary to 18

16  U.S.C., Section 1957, end quote.

17          Mr. Martinelli Linares, are you familiar with this

18  charge?

19          THE DEFENDANT:  Yes, I am, your Honor.

20          THE COURT:  Do you understand what you're charged

21  with in Count One?

22          THE DEFENDANT:  I do, your Honor.

23          THE COURT:  Have you reviewed it with counsel?

24          THE DEFENDANT:  I have, your Honor.

25          THE COURT:  Has counsel answered any questions you

PROCEEDINGS

1   might have had?

2         THE DEFENDANT:  He has, your Honor.

3         THE COURT:  You're charged with the offense of

4   conspiracy.  What is your understanding of the nature of a

5   conspiracy?  What is a conspiracy.

6         THE DEFENDANT:  It's an agreement between me and

7   others to carry out an illegal act.

8         THE COURT: A plus.  That's it, it's the agreement

9   itself.  That's the nature of the offense charged in Count

10   One, the agreement, not whether you did it, but you agreed to

11   do it.

12         Do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  All right.  Now we'll turn back to your

15   plea agreement to discuss matters of sentencing.  This

16   discussion, sir, comes essentially in three parts.  First, is

17   the statutory penalties that the Congress has written into the

18   law that you face, then we'll discuss briefly the so-called

19   sentencing guidelines, and finally, I will explain what the

20   law ultimately requires of me.

21         All right.  As you'll see in paragraph one of your

22   plea agreement, you face a maximum -- pardon me.  You face a

23   maximum term of imprisonment of 20 years in prison, that is 20

24   years without parole, and there is no parole in the federal

25   system.

PROCEEDINGS

1          Do you understand that?  In effect, that's the worse

2    thing that could happen, do you understand that?

3          THE DEFENDANT:  I do, your Honor.

4          THE COURT:  There is no mandatory minimum sentence,

5    but you face a term of three years supervised release.

6    Supervised release is a term of supervision that begins to run

7    the moment you are released from federal custody.  In your

8    case it may have little relevance, but let me just explain it

9    to you nonetheless.

10          If you were to violate the terms or conditions of

11   your supervised release at any time during the period of

12   supervision, you could be returned to prison under the terms

13   of my sentence in this case for up to two years without any

14   credit being given to you for the time you spent at liberty

15   under supervision.  You follow?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  A quick example that comes to mind that

18   might be relevant in your case is if you're removed from the

19   United States and then you illegally return, that would be a

20   violation of your supervised release, okay, among other

21   things.

22          Okay.  The statute also provides for a fine of up to

23   $500,000 or twice the gross gain or loss, whichever is

24   greater.  Restitution is mandatory in an amount to be

25   determined by the Court at some subsequent proceeding with the

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1    assistance of counsel.  A special assessment will be imposed

2    as is required of $100, and as I've already mentioned and as

3    you're quite aware I assume from your agreement, you will be

4    removed from the United States following the service of your

5    sentence.

6             Do you understand that?

7             THE DEFENDANT:  Yes, your Honor.

8             THE COURT:  Now those are the statutory penalties

9    that you face.  We are -- now we turn to the subject of the

10   sentencing guidelines.  I note from your agreement that you

11   agree with the calculation suggested by the government in your

12   agreement of the sentencing guidelines.  They address the

13   question of where within this very broad range of zero to 20

14   years you should be sentenced.  I should add that the

15   guidelines are not binding on the Court, but I am required as

16   a first step in the sentencing process to consider the

17   guidelines range.

18            Now, the government has, with your agreement,

19   calculated a sentencing range in this case of between 108 to

20   135 months assuming a Criminal History Category of I, which

21   based upon counsel's letter I suggest will be the case.  Okay.

22   I can't tell you whether I agree with that range or not, I may

23   very well agree with it, I'm not in a position to do that

24   until after I have received the presentence report prepared by

25   the Probation Department with your input, counsel's input, as

PROCEEDINGS

1    well as the government's.  That report will tell the story of

2    the case, your involvement in it.  It will provide a

3    biography, any history, criminal history or what.  It will

4    also reflect the Probation Department's recommended

5    calculation of the guidelines range.  You'll see that report

6    before I do.  You'll be given an opportunity to voice

7    objection or otherwise comment.  Eventually the report will

8    come to me.  At that point it's my obligation to calculate the

9    guidelines for myself.  If there are any material facts that

10   weigh on the calculation of the guideline sentencing range or

11   may affect the sentencing judgment itself, the first order of

12   business will be to resolve those differences, and that can be

13   done in a number of ways, either through informal presentation

14   by counsel or, if necessary, as a result following a full

15   evidentiary hearing here in court, okay.  Once those facts are

16   established, I will apply the facts to the guidelines, as I

17   understand them, and thereby calculate the sentencing range.

18           Okay, that gets us to the third and final part of

19   what sentencing is required of me.  I'm required to impose a

20   reasonable sentence.  Now a reasonable sentence could be

21   defined as follows:  A sentence that first considers the

22   advisory guideline range, considers as well any statutory

23   factors concerning the offense, any offense characteristics,

24   any information about you and your background, anything at all

25   that counsel brings to my attention, either your counsel or

PROCEEDINGS

1    government counsel, that might bear on the question of the

2    appropriate sentence.  At that point after considering all of

3    that, I am required to impose what the law regards as a

4    reasonable sentence.

5         Now I mentioned a moment ago that with the exception

6    of sentence, there is no right to an appeal.  Well, now let me

7    explain the exception, and you're familiar with this from

8    paragraph 4 of your plea agreement.

9         MR. HECKER:  Your Honor, may I just have a one

10   moment to confer with the government about paragraph 4?

11        THE COURT:  Certainly, go ahead.

12        (Counsel confer.)

13        THE COURT:  Everybody on the same page?

14        MR. HECKER:  We are, Judge.

15        THE COURT:  I started to say with respect to

16   paragraph 4, you have agreed, as I understand it, you tell me

17   what your understanding is, that you will not appeal the

18   judgment of sentence or conviction either directly or what we

19   call collaterally, in any way challenge it, as long as I

20   impose a sentence of 151 months or less.  All right.  If I go

21   152 months, you have a right to appeal that sentence.  And if

22   you could no longer afford the fees and expenses associated

23   with that appeal including counsel fees, it would be paid by

24   the Court under the authority of the Criminal Justice Act.

25   All right?  But as I understand it, any sentence 151 months or

PROCEEDINGS

1   less, there is no right of appeal.  So no matter what I do, no

2   matter how many mistakes I make, legally or factually, and

3   impose a sentence of 151 months or less, case closed, no right

4   of appeal.  That's my understanding.

5              Is it your understanding?

6              THE DEFENDANT:  Your Honor, it is my understanding

7   as well.

8              THE COURT:  All right.  I think we touched all the

9   bases here.

10             MR. REDMANN:  Your Honor, one issue of penalty is

11  the forfeiture.

12             THE COURT:  Did I miss that?

13             MR. REDMANN:  Yes, your Honor.  There's a forfeiture

14  money judgment agreed to in the amount $18,892,532.40 and the

15  forfeiture provisions are paragraphs 7 through 13 of the plea

16  agreement.

17             THE COURT:  All right.  Correct, Mr. Hecker?

18             MR. HECKER:  Yes, your Honor.

19             THE COURT:  I didn't see it in the plea agreement

20  itself, but it is in the -- it's not in the -- it is in the

21  plea agreement, but further down, okay.  So as a result of

22  your conviction, Mr. Martinelli Linares, you have agreed to

23  forfeit that sum of money.

24             Do you understand that?

25             THE DEFENDANT:  I do, your Honor.

PROCEEDINGS

1    THE COURT:  Now I haven't touched on every provision
2    in this plea agreement quite obviously.  You've assured me
3    that you reviewed it thoroughly with counsel, you have no
4    questions of the Court, I have your assurance you're fully
5    familiar with everything in the agreement?

6            THE DEFENDANT:  Yes, your Honor, I'm fully familiar.

7            THE COURT:  Bear with me a second.  All right.  We
8    turn to the plea itself.  Are you ready to plea?

9            THE DEFENDANT:  I am, your Honor.

10           THE COURT:  What is your plea to Count One of the
11   indictment 21-CR-65, guilty or not guilty?

12           THE DEFENDANT:  Guilty.

13           THE COURT:  Are you pleading guilty voluntarily?

14           THE DEFENDANT:  Yes, I am, your Honor.

15           THE COURT:  Has anyone pressured you in any way to
16   plead guilty?

17           THE DEFENDANT:  No, they have not, your Honor.

18           THE COURT:  Has anybody made any promises to you
19   that are not reflected in your plea agreement?

20           THE DEFENDANT:  No, they have not, your Honor.

21           THE COURT:  Has anybody given you any assurances as
22   to what I will do on the question of sentence?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  All right, then, sir, it's alleged that
25   in Count One that you conspired to commit money laundering.

PROCEEDINGS

1    Did you do that?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Tell me what you did.

4            THE DEFENDANT:  Between August 2009 and

5    September 2015 I agreed with other people, including my

6    brother Luis, to wire funds that were the proceeds of bribes

7    paid by Odebrecht to a family member of mine who was a

8    government official in Panama.

9            We caused those funds to be wired into an account in

10   the United States to facilitate the bribery of the government

11   official in Panama, which was in violation of Panama law.  And

12   I also agreed to cause further transactions into and out of

13   the United States with proceeds of the same bribery scheme, in

14   part to conceal where they came from and who they were for.

15           I also agreed to establish offshore bank accounts in

16   the names of offshore shell companies in order to receive and

17   disguise the bribe payments and to serve as a signatory on

18   some of those accounts.

19           Between 2009 and 2012, $28 million in bribe proceeds

20   from Odebrecht were transferred into the accounts for the

21   benefit of a senior official in Panama, with more than

22   $19 million of those payments transferred to U.S. banks, some

23   of which were located in New York.

24           THE COURT:  Well, I just simply note for the record

25   that this attachment to the plea agreement goes beyond that, I

PROCEEDINGS

1   just want to make sure I've got the right attachment.

2          MR. HECKER:  Correct, your Honor.  The factual

3   proffer that Mr. Martinelli Linares agreed to is a fuller

4   description of the conduct.

5          THE COURT:  Okay, fair enough.  Satisfied with the

6   allocution?

7          MR. REDMANN:  Yes, your Honor.  I just want to ask

8   that if there's an agreement or stipulation that the Panama

9   government official described meets the elements of a public

10  servant under Panamanian law.

11         MR. HECKER:  Yes, no dispute, your Honor.

12         THE COURT:  All right.  Anything else, Mr. Hecker?

13         MR. HECKER:  No, your Honor.

14         MR. REDMANN:  Your Honor, just on the point of

15  venue, we want to note that there is a waiver of venue in the

16  plea agreement and that in addition that the government would

17  show if -- at a trial, absent a waiver, that there is a venue

18  because the defendant was first brought to the Eastern

19  District of New York at JFK Airport and the conduct began

20  overseas and, secondly, that there's venue because the

21  financial transactions, the communications, electronic

22  communications in furtherance of them occurred in the Eastern

23  District of New York.

24         THE COURT:  All right, thank you.  I note the venue

25  waiver in the agreement.

PROCEEDINGS

1    Based on the information given to me I find that the

2    defendant is acting voluntarily, he fully understands his

3    rights, the consequences and possible consequences of his plea

4    and that there is factual bases for the plea of guilty.  I,

5    therefore, now formally accept the plea of guilty to Count One

6    of indictment 21-CR-65.

7    I urge you, Mr. Martinelli Linares, to cooperate

8    with the Probation Department in their preparation of the

9    presentence report consistent of course with the advice of

10   counsel.

11   I direct the government to maintain the possession

12   of the original plea agreement and ask the Clerk of the Court

13   to announce the date of sentence.

14   THE COURTROOM DEPUTY:  May 13th, 2022, 11 a.m.

15   MR. HECKER:  Your Honor, if I may.  We do request

16   expedited sentencing in this case and I recognize that in

17   these times of COVID that often the Probation Department needs

18   more time.  I would just note for the record, my understanding

19   that Mr. Martinelli Linares's brother's probation interview

20   for the PSI is this week and my real expectation is that we'd

21   be prepared for a sentencing much earlier than May.  So I just

22   want to note for the Court that we will be pushing for a much

23   earlier date for sentencing if the report is ready in time.

24   THE COURT:  I understand that and we'll be ready

25   when you are, let's put it that way.  Given the full range of

PROCEEDINGS

1    circumstances it seems appropriate that the Probation

2    Department be encouraged to give this their immediate

3    attention.  Anything else?

4          MR. HECKER:  Yes, your Honor, on behalf of

5    Mr. Martinelli Linares we want to ask the Court to reconsider

6    the issue of bail now that the plea has been entered.  And I

7    would just say we did argue for bail on Saturday when we were

8    in front of Magistrate Judge Levy and he denied that request,

9    but I think recognized that there was a real difference

10   between asking for bail in the run up to a plea and then after

11   a plea, and the reason of course is because the incentives for

12   an individual to flee changes pretty dramatically.  And in

13   fact, the government in this case in arguing for detention has

14   repeatedly emphasized that back in June of 2020 when

15   Mr. Martinelli Linares and his brother were negotiating with

16   the government, they left, they fled.  They made a mistake of

17   pretty epic proportions, it's resulted in my client spending

18   17 months in a Guatemalan prison and since Saturday being at

19   the MDC where, other coming to court, he was allowed out of

20   his cell for 10 minutes to take a shower on Sunday because

21   he's in quarantine, notwithstanding that he's had two

22   vaccinations and a booster shot, but the upshot of all of this

23   is that we're now in a very different posture.

24          Sometime ago my client made a decision, with his

25   brother, to resolve this case and negotiated a plea agreement,

PROCEEDINGS

1    which was signed while he was still in a Guatemalan prison.

2    He's now entered that plea and, as the Court knows, our

3    intention is to move forward to a sentencing at which point

4    we'll be asking the Court to consider a sentence of time

5    served given all the facts and circumstances of the case.  I

6    fully recognize that of course the Court will need to consider

7    all of the information before making a judgment about that,

8    but that's what the intention of my client is.  And it's

9    important to understand there are still open charges in

10   Panama.  One of the reasons for the clear factual proffer in

11   this case is to try ensure that he's not re-prosecuted in

12   Panama for the very same charges.

13          So to be very clear, the plan has been for some time

14   and remains, to have judgment entered in this case, once

15   Mr. Martinelli Linares has served his time here, to go back to

16   Panama and to argue in Panama that he has already done his

17   time and served his penalty in connection with what we believe

18   is the same offense charged in two different countries.

19          The upshot of all of that is my client has zero

20   reason to flee.  And in those circumstances, after a plea, we

21   respectfully think that there are conditions that can be set,

22   including with a substantial bail package.  We proposed a bond

23   of $5 million secured by two and a half million dollars of my

24   client's own cash which can be further secured through

25   suretors.  We have a list of seven.  I don't know that you

PROCEEDINGS

1  need seven.  A couple of them have property including in this

2  district that they'd put up because they believe he's going to

3  resolve his case here and await sentencing.  And on those

4  facts we think we presented a clear case for setting bail with

5  appropriate conditions.

6      THE COURT:  Okay.  You want to be heard?

7      MS. SMITH:  Yes, your Honor.  I mean, I think one

8  thing Mr. Hecker and I agree on is that the burden does shift

9  at the plea, it actually shifts against the defendant.  And

10  the reason for that is because once you've pled, the

11  consequences of that plea are going to happen as opposed to

12  they could happen.

13      I think the argument that he has nothing to gain by

14  fleeing now as opposed to say last week and that he came to

15  the U.S. to plead guilty are -- we would strongly disagree

16  with both of them.

17      If he had intended to come here and resolve charges,

18  he would have waived immediately and come and pled.  Instead,

19  he stayed in Guatemala fighting extradition to Panama --

20  fighting our extradition here so that he could get back to

21  Panama.  The same criminal charges that Mr. Hecker is talking

22  about have been pending since the time of their flight.  So

23  when they were fighting in Guatemala to get back to Panama and

24  not to come here, they knew those criminal charges were

25  pending and they made a clear choice, both when they fled and

PROCEEDINGS

1   when they were fighting extradition that they would prefer to

2   face those charges in Panama than to come here.  And, in fact,

3   I mean they were willing to sit in a prison in Guatemala for

4   17 months and fight those charges rather than come back to the

5   United States.

6          So I think the truth is that the calculus has not

7   changed, because all that has happened is the inevitable plea,

8   which I think right now they are guilty and the decision to

9   plead guilty makes sense, but they have not yet gotten that

10  final sentence.  And there is still the prospect of additional

11  jail time in the United States as opposed to Guatemala.

12  There's still the prospect of $19 million in forfeiture, which

13  far outweighs the amount that they would put up for bail.  The

14  defendant is also an Italian citizen, so there are other

15  countries to which he could flee and, you know, obviously I

16  think you had said and acknowledged, originally when we were

17  doing the bail argument for his brother, he has access to

18  great wealth so he has the means and the political connections

19  to make that flight happen.  So for all of those reasons we

20  don't believe that he can show his burden of not being a

21  flight risk.

22         In addition, the package that's been put up I would

23  argue, while we don't believe there's any conditions that

24  would assure his return to court, is grossly inadequate given

25  the amount of forfeiture that he's facing, the access to

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

PROCEEDINGS

1    wealth that he has.  Just in the PSR it lists $4.9 million in

2    real estate and $3.2 million in cash that the defendant has

3    himself separate and apart from his family wealth.

4            So in addition I think our prospective is, there are

5    no conditions but certainly the bail package that's been

6    offered would be insufficient.

7            THE COURT:  Well, you know, we had this, was it last

8    week or the week before with his brother.  I'm one who tries

9    his best to arrange for people to be released for any number

10   of reasons not the least of which is he's now in a

11   presentencing posture, the need to confer and collaborate with

12   counsel in terms of effective sentencing presentation is

13   paramount.

14           Mr. Hecker, you have marshaled every argument I

15   could conceivably think of in support of his release, but I

16   honestly don't see what's changed.  Yes, he's entered a plea

17   of guilty.  I acknowledge that, but in terms of his

18   incentives, I don't know what's changed, and actions do speak

19   louder than words and unfortunately the actions in this case,

20   we can call them a mistake, a grave mistake, a misjudgment

21   because they put him in a Guatemalan prison for 17 months, I'm

22   just not convinced.  The full circumstances of his departure

23   in 2020, including the planes, the boats and the phony

24   credentials and the health waiver and everything else, this is

25   somebody who planned an escape to put it bluntly, and although

PROCEEDINGS

1  he may be sincere right now, were he to somehow elude the

2  jurisdiction of this Court, I don't know how he would be in

3  any worse shape than he would have been had he been permitted

4  into Panama back in June of 2020.

5          I'm going to have to turn you down, I don't think

6  you've met your burden.  I can't say that there isn't a sum of

7  money at some point where I might say, well, maybe that's

8  standard, but I don't think we're anywhere near that to be

9  honest with you.  So I'm not going to upset Judge Levy's

10 determination.

11         I think the thing to do, as we've suggested already

12 during the discussion, is to move it promptly through the

13 presentence phase and get the man and his brother up for

14 sentencing and we'll see what happens.

15         Have a nice day, folks.

16         MS. SMITH:  Thank you.

17         THE COURTROOM DEPUTY:  All rise.

18         (Matter concluded.)

19                    *     *     *     *     *

20 I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

21

22 s/ Georgette K. Betts                December 27, 2021

23 GEORGETTE K. BETTS                   DATE

24

25