**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0889
DIRECT EMAIL    shecker@kaplanhecker.com

May 13, 2022

**BY ECF**

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

          RE:     <u>United States v. Martinelli Linares</u>, 21 Cr. 65 (RJD)

Dear Judge Dearie:

       On May 6, the government asked this Court to sentence Rica and Luis Martinelli to at least *nine years* in prison for laundering payments from Odebrecht to their close family member ("Panama Government Official"). The Department of Justice cited no precedents for a sentence of this severity in any remotely comparable case—because none exist. Its submissions ask this Court to determine that Rica and Luis are at least five times more culpable than Jose Grubisich, and that they should get roughly four to five times the custodial sentence served by Marcelo Odebrecht.

       The Fraud Section oversees foreign-bribery prosecutions in this country. It could have explained candidly why its sentencing request deviates so radically from those imposed on similarly culpable defendants. Instead, the government remained silent about the extraordinary nature of its request. It asked this Court to impose the most severe foreign-bribery sentence in the history of the Second Circuit—one far longer than any sentence previously imposed on actual government officials who solicited bribes for personal enrichment—on Rica and Luis Martinelli for their conduct as intermediaries between Odebrecht and Panama Government Official. And unlike any other foreign-bribery case with which the undersigned are familiar, this Court's sentence will not resolve Rica and Luis's criminal liability. As a result of the U.S. and Panamanian governments' inability or unwillingness to reach a joint resolution, Rica and Luis will continue to face Panamanian criminal charges even after this Court sentences them for the same conduct.

       Lacking any reasonable basis in law, and without any ability to point this Court to remotely comparable sentences, the government's letters relied instead on distortions and innuendo. Most importantly, the government's smokescreen submissions obscured the central

KAPLAN HECKER & FINK LLP

2

fact that the 23 months of time that Rica and Luis have already served would be within the heartland of sentences for even more egregious misconduct.

What is more, almost a quarter of Rica and Luis's incarceration has come during one of the bleakest periods in the long-troubled history of the MDC. Both brothers were placed into administrative segregation upon arrival and spent day after day in isolation. The prison was locked down multiple times shortly after Rica and Luis emerged, causing long stretches in which they were confined to their cells nearly all day long. The government waved off Rica and Luis's days of near-solitary confinement as a temporary inconvenience and claimed on May 6 that "[t]here have been no restrictions in place" at the MDC since February.[1] The government spoke too soon. Just this week, the MDC was locked down yet again after violent attacks on inmates. Rica and Luis have not been allowed to bathe since Monday, May 9. They have been released from their cells just once in the last four days—for a brief visit with the undersigned this morning—after which they were returned to indefinite total confinement.

This is the context that is missing entirely from the government's sentencing submissions, but which is required to be considered to determine a just and lawful sentence.

### I. The government asks this Court to deem Rica and Luis many times more culpable than the ultimate ringleaders of a "massive and unparalleled bribery and bid-rigging scheme."[2]

Rica and Luis "conspired to facilitate the payment of bribes from Odebrecht to Panama Government Official," their close family member. Gov't Letter at 2. Their offense "stems from a larger investigation into a massive bribery and money laundering scheme related to Odebrech and its subsidiary Braskem" by which those Brazilian conglomerates paid nearly $800 million in bribes over two decades. *Id.*

This Court sentenced Jose Grubisich—the former CEO of Braskem who led a 12-year scheme to "divert[] approximately $250 million from Braskem into a secret slush fund" for bribes[3]—to 20 months in prison. *See United States v. Grubisich*, No. 19-CR-102 (E.D.N.Y. Oct. 12, 2021). In Brazil, Marcelo Odebrecht—the former CEO of the eponymous "bribery machine"[4]—served 30 months in prison before being released to serve an additional 30 months

---

[1] *See United States v. Ricardo Alberto Martinelli Linares*, No. 21-CR-65, ECF 57 at 1 (E.D.N.Y. May 6, 2022). Because the government submitted virtually identical sentencing letters for Rica and Luis, this submission cites only to Rica's letter and refers to it from this point as "Gov't Letter."

[2] Press Release, Dep't of Justice, *Odebrecht and Braskem Plead Guilty and Agree to Pay at Least $3.5 Billion in Global Penalties to Resolve Largest Foreign Bribery Case in History* (Dec. 21, 2016), perma.cc/3HYW-PXWD.

[3] Press Release, Dep't of Justice, *Former Chief Executive Officer of Petrochemical Company Sentenced to 20 Months in Prison for Foreign Bribery Scheme* (Oct. 12, 2021), perma.cc/ST4A-959K.

[4] Gov't Letter at 1.

of house arrest, after which he will be permitted to return to work and complete his sentence with community service.[5]

The government writes that Rica and Luis are "not similarly situated to Jose Carlos Grubisich." Gov't Letter at 14. That is obviously correct. One was a kingpin at the hub of a criminal enterprise, the other two were acting at a family member's request to help him receive a portion of that enterprise's bribes. Yet, defying all logic, the government argues that Rica and Luis are *more culpable* than the twelve-year leader of Braskem's bribery machine. *Id.*

The government's reasoning is specious. Their letter first contrasts Grubisich's guilty plea and acceptance of responsibility with the puzzling claim that Rica and Luis "never truly accepted responsibility." *Id.* This is a remarkable statement coming from the same government lawyers who, just months ago, signed and offered up to the Court a plea agreement with Rica and Luis. *See also* Gov't Letter at 7 (recommending that the Court adopt a Guidelines calculation that deducts three levels for acceptance of responsibility). It also takes liberties with the facts. Mr. Grubisich pleaded guilty and accepted responsibility—like Rica and Luis. But *unlike* Rica and Luis, Mr. Grubisich only did so after he was arrested and charged with U.S. crimes. These stories are, indeed, quite different. Unlike Mr. Grubisich, Rica and Luis walked right up to the U.S. government and began incriminating themselves long before they were charged with the crime for which they have pled guilty and accepted responsibility. Unlike Mr. Grubisich, Rica and Luis provided the U.S. government with virtually *all* of the evidence necessary to make a case against themselves. And unlike Mr. Grubisich, Rica and Luis provided information about the location of Odebrecht monies, and continue to render unique assistance in repatriating those funds, that neither the U.S. nor Panamanian governments could have obtained from any other source.

### II. The government seeks to penalize, rather than credit, Rica and Luis for attempted cooperation that provided the basis for their convictions.

The government's letters purport to dive deeply into Rica and Luis's "failed cooperation." Gov't Letter at 4. Notwithstanding the Department of Justice's institutional obligation to "ensure that the relevant facts…are brought to the court's attention fully and accurately," JUSTICE MANUAL § 9-27.710 (Participation in Sentencing), the government's letter omits critical facts and blurs out others.

First and foremost is that Rica and Luis initiated their interactions with U.S. law enforcement. *Cf., e.g.*, Ex. A, Sent'g Tr. at 25, *United States v. Mebiame*, No. 16-CR-627 (E.D.N.Y. May 31, 2017) (prosecutor's emphasis that foreign-bribery defendant "started his engagement" with government only after he was confronted by agents). What is more, Rica and Luis themselves provided *all* of the substantial evidence that incriminated them—before they were ever arrested or charged for this offense. *Compare id.* at 6-8 (emphasizing that defendant only provided information after receiving "impactful discovery" constituting "substantial evidence" of his own guilt). As the government's letters concede (via remarkable understatement), both Rica and Luis "provided information to the government that was useful in

---

[5] *Billionaire Odebrecht in Brazil scandal released to house arrest*, REUTERS (Dec. 19, 2017), perma.cc/KDT4-7WLQ.

KAPLAN HECKER & FINK LLP

advancing its investigation"—so useful and so credible, in fact, that the government was prepared to offer Rica and Luis cooperation agreements. Gov't Letter at 4.

The government's letters suggest that the potential for formal cooperation agreements vanished when Rica and Luis left the United States in June 2020. *See id.* at 4-5. If that is true, it contradicts the government's previous representations. From their jail in Guatemala, Rica and Luis retained the undersigned with instructions to negotiate a guilty plea and repatriation of funds with both the United States and Panama, and thereby attempt to resolve the criminal cases pending in both countries for the same Odebrecht-related conduct. During these negotiations— that is, after Rica and Luis were already in Guatemala—U.S. prosecutors consistently represented that they would consider entering formal cooperation agreements with Rica and Luis upon their return to the United States. Of course, it is not uncommon for the government to fail to reach a formal agreement even with credible witnesses who have provided uniquely valuable information. That may be especially true where formal cooperation benefits could only be obtained by incriminating a close family member. *See* Preet Bharara, DOING JUSTICE 98 (2019) ("For real people, the decision to cooperate represents something more than a mere bargain in exchange for a shot at liberty. . . [I]t could also mean forsaking family. . . It is hard."). But the possibility of cooperation credit was a foundational premise of the parties' discussions while Rica and Luis remained incarcerated in Guatemala.

Those discussions bore valuable fruit for the United States and Panama alike: Rica and Luis began the process of repatriating Odebrecht-related funds while they were in the Guatemalan jail, and agreed in principle to their guilty plea and unusually detailed factual proffer before they returned to the United States to formally enter the plea before this Court. For its part, the United States has secured two convictions without trial in this case, received a mountain of evidence from Rica and Luis, and obtained their unique assistance in repatriating funds that would otherwise be beyond the government's reach. And while the United States was either unwilling or unable to effect a joint resolution with Panama, that country is taking steps to receive the funds that have been made available to both governments *only* through Rica and Luis's cooperation that the government now spuriously dismisses, on the eve of sentencing, as a "façade." *See* Gov't Letter at 2; *see also id.* at 11 n.3 (describing coordination with Panama on restitution or sharing in forfeited proceeds).

Just as it is beyond dispute that Rica and Luis provided the U.S. and Panamanian governments with the means of their own incrimination and restitution, there can be no doubt that Rica and Luis are paying a high price for failing to secure a formal cooperation agreement. For one thing, they will not get the benefit of a 5K motion from the government—though the Court can and should consider under Section 3553(a) the cooperation from Rica and Luis's early self-incrimination through their ongoing efforts to repatriate Odebrecht-related funds. *See United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) ("[I]n formulating a reasonable sentence, a sentencing judge . . . should take under advisement . . . the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1."). For another thing, Rica and Luis's decision to leave the United States before securing a formal cooperation agreement resulted in a denial of bail

upon their return and more than six months of detention under unusually difficult conditions at the MDC.

In the end, Rica and Luis's attempted cooperation "failed" themselves more than anyone else. The government got all that it needed to secure convictions in this case, and then some: the United States will recoup all of the funds it seeks from Rica and Luis, and only because of their assistance. *Compare, e.g.*, *United States v. Inniss*, No. 18-CR-134, ECF 29, 31 (E.D.N.Y. May 31, 2017) (sentencing to 24 months senior foreign official who extorted bribes, whose post-trial statements shifted blame "to everyone else…and portray[ed] himself as the victim," and who suggested "that the [foreign] government should investigate a witness who testified against him at trial").

### III. The government's sentencing submissions relied on unwarranted innuendo and failed to engage meaningfully with the Section 3553(a) factors.

The government's submissions were far from a sober assessment of the facts and the law. Instead, they were strewn with needless innuendo and half-truths meant to tar Rica and Luis ahead of sentencing. A few brief responses to these regrettable statements follow in the order in which they appear in the government's letters:

- The government suggests that Rica and Luis "invest[ed] approximately $9.5 million in a cell phone service company," Gov't Letter at 3, without clarifying that the investment was made with Panama Government Official's ill-gotten funds, at Panama Government Official's direction, and for Panama Government Official's benefit. The imprecise language not only runs the risk of confusing the Court about who personally benefited from Odebrecht's bribery of Panama Government Official, but it comes in service of a request for a Guidelines sentence that makes *no* effort to sort personal gains from the overwhelming amount of funds that were passed *through*, but not *for*, Rica and Luis. *Compare, e.g.*, *Mebiame*, No. 16-CR-627, Sent'g Tr. at 7 (E.D.N.Y. May 31, 2017) (prosecutor's argument before foreign-bribery defendant sentenced to 24 months that Guidelines sentence was appropriate where range was based only "on the $7 million the Defendant actually put in his own pocket" and not "on a *Pinkerton* theory").

- 



6

- The government accuses Rica and Luis of lying about being "afraid to return to Panama." Gov't Letter at 5. The proof? "However…both [Rica and Luis] applied for bail in Panama on their pending charges so that they would not be imprisoned when they returned." *Id.* This is a non sequitur: surely one can fear criminal exposure even while undertaking efforts to secure bail. What is more, it's not true: the brothers have not secured bail on all of their pending Panamanian criminal charges. Worse still, the government's provocative allegation ignores relevant (and publicly available) information. When Rica and Luis told the Department of Justice about their "fear of retaliation from political enemies" in Panama, Gov't Letter at 5, that was *before* Panama's government switched hands. At the time of Rica and Luis's statements, they had pending asylum applications in the United States—including because the Panamanian presidency and attorney general's office were controlled at that time by rivals determined to set the machinery of the Panamanian state on Rica, Luis, and their family.

- The government relies on two articles pulled from the internet to allege that Rica and Luis "sought and obtained invalid diplomatic credentials" from the Central American Parliament ("Parlacen"). *See* Gov't Letter at 5 & n.2. The media outlets (*Prensa* and *La Estrella*) are associated with Panamanian factions opposed to the Martinellis' political party and spin an inaccurate tale that has regrettably been adopted and presented by the Department of Justice. The simple fact is that both Rica and Luis were elected as alternative deputies to the Parlacen in 2019. They were not formally sworn in because that process requires either physical presence at the Parlacen's meeting place in Guatemala City or a ceremony conducted by a particular official in Panama. But their election to, and membership in, the body is not reasonably in dispute. The government is elevating an internal legislative dispute about Parlacen's swearing-in requirements—and whether its membership is self-executing or certain of its features require a formal swearing-in ceremony—into an unsupported and inflammatory suggestion that Rica and Luis relied on false documents to seek parliamentary immunity. That is just not so.

- Rica spent more than seventeen months in a Guatemalan prison. (Luis spent a few weeks less in Guatemala, and a few weeks more in "administrative segregation" at the MDC, due to the timing of their transfers from Guatemalan to U.S. custody.) The government misleadingly writes that Rica and Luis were detained in "an apartment" in Guatemala. We are puzzled by this description. Rica and Luis were detained at a jail on the Mariscal Zavala military base by order of a Guatemalan court. The military detention complex is one of Guatemala's designated pretrial detention facilities, and it contains an interior facility for the "confinement [of] those persons deprived of liberty whose lives or safety, for reasons of a situation of vulnerability and security, may be

KAPLAN HECKER & FINK LLP

7

at risk." *See* Inter-American Comm'n on Human Rights, *Situation of Human Rights in Guatemala* 214 (2017), perma.cc/P8JD-J78X (describing the Guatemalan law providing for pretrial detention within the Mariscal Zavala military complex). Indeed, Rica and Luis were detained alongside Guatemalan public officials accused of involvement in the same Odebrecht bribery scheme. *See, e.g.*, Irving Escobar, *Odebrecht: Carlos Batres Gil se presenta ante juzgado y termina el día en Mariscal Zavala*, PRENSA LIBRE (Apr. 6, 2021), perma.cc/J6JV-BVFC (explaining that a Guatemalan judge detained Carlos Batres, a former Guatemalan public official, in the same Mariscal Zavala prison for Odebrecht-related pretrial detention in April 2021).

- Finally, the government drops an unattributed reference to "information that [Rica and Luis] were planning an escape" from Guatemalan custody. Gov't Letter at 6. There can be little point to this reference except to prejudice next week's proceedings. Given the government's apparent familiarity with online media, *see* Gov't Letter at 5 n.2 (citing opposition media for allegation that Rica and Luis had "invalid" parliamentary credentials), they surely are aware that no less an authority than Guatemala's president denied that any such escape attempt was planned or took place. *See Presidente de Guatemala niega plan de fuga de hijos de Martinelli*, DEUTSCHE WELLE (German public media's Spanish-language publication), dw.com (Aug. 23, 2021), p.dw.com/p/3zMLJ (headline stating "President of Guatemala denies that Martinelli's sons planned to escape").

IV. **The government's submissions do not cite a <u>single</u> comparable sentence to justify its sentencing recommendation—because none exist.**

The government's May 6 submissions are signed jointly by the U.S. Attorney's Office for the Eastern District of New York (which has brought many of the most significant foreign-bribery cases in U.S. history) and the Fraud Section (which has overseen all such cases). No party has greater access to the full history of sentencing outcomes in foreign-bribery cases. In this context, it speaks volumes that the government's request to sentence Rica and Luis Martinelli to a *decade in prison* comes completely unsupported by reference to even a *single* prior comparable sentence. No such sentences exist. The government is asking this Court to impose on Rica and Luis Martinelli the most severe foreign bribery-related sentence in the history of the Second Circuit, and one of the five longest in United States history.[6]

---

[6] *See* Jessica Tillipman, *The Ten Longest FCPA-Related Prison Sentences*, FCPA BLOG (Aug. 15, 2016), https://fcpablog.com/2016/08/15/jessica-tillipman-the-ten-longest-fcpa-related-prison-senten/. We understand that a small number of additional lengthy sentences have joined this top-ten list since its August 2016 publication. These include a sentence of 120 months (later reduced to 42 months) for Matthias Krull for his leading role in a $1.2 billion bribery and embezzlement scheme (No. 18-CR-20682, S.D. Fla.), and a sentence of 120 months for Alejandro Andrade who, as Venezuela's national treasurer, received over *one billion dollars* in bribes, including cash "as well as private jets, yachts, cars, homes, champion horses, and high-end watches," Press Release, Dep't of Justice, (Nov. 27, 2018) https://www.justice.gov/opa/pr/former-venezuelan-national-treasurer-sentenced-10-years-prison-money-laundering-conspiracy (No. 17-CR-80242, S.D. Fla.). In 2018, Juan Angel Napout was sentenced to 108 months after convictions on fraud and money laundering charges for his leadership of the FIFA scheme in which he was promised $25 million in personal bribes. *See United States v. Napout*, No. 15-CR-252, ECF 1008 (E.D.N.Y. Sept. 4, 2018).

**KAPLAN HECKER & FINK LLP**

8

By failing to identify a single related case—to say nothing of responsibly discussing the range of sentences for "defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6)—the government avoids engaging with the fact that a sentence to the nearly 23 months that Rica and Luis have served would put their punishment squarely within the heartland of sentences in foreign-bribery cases.

The most obvious case for comparison, of course, is *Grubisich*. The government argues beyond all reason that Rica and Luis Martinelli deserve a longer sentence for laundering $28 million in Odebrecht bribes than the 20 months to which this Court sentenced Jose Grubisich for leading an Odebrecht subsidiary's twelve-year, $250 million bribery campaign. In view of this staggering position on relative culpability, it is no wonder that the government's submissions avoid the word "disparity" (to say nothing of grappling meaningfully with how such disparate sentences would comport with the law's command of proportionality).[7]

Of course, Rica and Luis have already served more time behind bars than Jose Grubisich ever will. This Court's sentence cannot change that. And cases beyond *Grubisich* make clear that conduct more egregious than Rica and Luis's often results in a sentence of 24 months—almost exactly the amount of time they have already served.

Consider the case of Donville Inniss, who solicited bribes as a Barbadian cabinet officer and member of parliament. *United States v. Inniss*, No. 18-CR-134 (S.D.N.Y.). Inniss took the government to trial, and insisted on his innocence after the jury's guilty verdict. *See* Gov't Sent'g Mem., *Inniss*, ECF 129 at 10. Going further, Inniss allegedly continued to corruptly exercise power following his guilty verdict by suggesting that the Barbadian government prosecute one of the United States's chief witnesses. *Id.* Inniss was sentenced to 24 months. *See* Judgment, *Inniss*, ECF 132.

Or take Samuel Mebiame. Unlike Rica and Luis, Mebiame "built a business that profited through corruption." Gov't Sent'g Mem., *United States v. Mebiame*, No. 16-CR-627, ECF 25 at 3. Mebiame took home $7 million in personal profits for his work securing mining, oil, and mineral concessions in Western Africa for the American hedge fund Och-Ziff. *Id.* Recognizing that Mebiame was "a player," but that "there are many other people who are obviously as accountable or more accountable than he is," the Court sentenced Mebiame to a "substantial sentence" of 24 months. *See* Ex. A, Sent'g Tr., *United States v. Mebiame*, No. 16-CR-627 (E.D.N.Y. May 31, 2017).

---

[7] The government's submissions use the word "disparity" once, by way of referring this Court to an abrogated precedent that they wrongly argue precludes consideration of Rica and Luis's non-citizenship status. *See* Gov't Letter at 15-16 (citing *United States v. Restrepo*, 999 F.2d 640 (2d Cir. 1993)). But *Restrepo* is a pre-*Booker* decision about departures. As the government knows, the Second Circuit has affirmed after *Booker* that district judges may consider the collateral consequences of non-citizenship (including, for example, the inability to serve time at certain otherwise appropriate facilities) as relevant to a variance. *See United States v. Thavaraja*, 740 F.3d 253 (2d Cir. 2014). And many judges have done just that. *See, e.g.*, *United States v. Connolly*, No. 16-CR-370, ECF 457 at 91-93 (S.D.N.Y. Nov. 19, 2019) (sentencing a white-collar defendant to a non-custodial sentence "because he is a non-citizen" who "will not be eligible to serve his sentence in the same way that any American citizen who stood convicted of the same crime would serve…[a]nd that's not right").

KAPLAN HECKER & FINK LLP

9

### V.      Conclusion

The government's submissions acknowledge that the Odebrecht bribery scheme "had hundreds of participants in more than a dozen countries." Gov't Letter at 14. Remarkably, they proceed to ask this Court to sentence Rica and Luis Martinelli—indisputably peripheral actors in this massive scheme—to more time than any foreign-bribery defendants in this Circuit's history and deem them many times more culpable than the scheme's two ringleaders. That result would be manifestly unjust. It would require ignorance of sentencing outcomes in every reasonably related case.  It would flout the law.

Rica and Luis Martinelli brought themselves to the U.S. government's doorstep. They provided all the information necessary to convict them of the crime to which they pled guilty. They have already begun the work of repatriating Odebrecht monies that, but for the brothers' assistance, would be out of the reach of the U.S. and Panamanian governments. Against Jose Grubisich's 20-month sentence, and 24-month sentences for even more culpable conduct, the nearly 23 months that Rica and Luis have served is the parsimonious sentence in this case.

Respectfully submitted,

*[signature]*

Sean Hecker
Justin Horton
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118

*Counsel for Ricardo Martinelli Linares*


James G. McGovern
Samuel Rackear
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017

*Counsel for Luis Martinelli Linares*